1  LEIGH GODDARD, NV Bar #6315
   PHILIP MANNELLY, NV Bar #14236
2  McDonald Carano LLP
   100 West Liberty Street, Tenth Floor
3  Reno, NV 89501
   Telephone: (775) 788-2000
4  Facsimile: (775) 788-2020
   lgoddard@mcdonaldcarano.com
5  pmannelly@mcdonaldcarano.com

6  KEVIN JOHNSON (*pro hac vice* forthcoming)
   RAY ZADO (*pro hac vice* forthcoming)
7  SAM STAKE (*pro hac vice* forthcoming)
   Quinn Emanuel Urquhart & Sullivan, LLP
8  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, CA 94065
9  Telephone:  (650) 801-5000
   Facsimile:  (650) 801-5100
10 kevinjohnson@quinnemanuel.com
   rayzado@quinnemanuel.com
11 samstake@quinnemanuel.com

12 *Attorneys for Salesforce, Inc.*

13              UNITED STATES DISTRICT COURT

14                   DISTRICT OF NEVADA

15 WSOU INVESTMENTS, LLC,              Case No.

16              Plaintiff,
                                       **APPENDIX OF EXHIBITS TO**
17        v.                           **SALESFORCE, INC.'S MOTION TO**
                                       **COMPEL COMPLIANCE WITH**
18 SALESFORCE, INC.,                   **SUBPOENA *DUCES TECUM* AND *AD***
                                       ***TESTIFICANDUM***
19              Defendant.
                                       **VOLUME 1 OF 3**
20

21

22        Salesforce, Inc. ("Salesforce"), submits its Appendix of Exhibits to its Motion to Compel

23 Compliance with Subpoena *Duces Tecum* and *Ad Testificandum*.

24

| Exhibit No. | Exhibit Description | Volume | Bates No. |
|---|---|---|---|
| 1 | Unified Patents - A Year of WSOU | 1 | S0001 – 0007 |
| 2 | 11-17-22 Shanus Deposition Transcript | 1 | S0008 - 0021 |

25
26
27
28

-1-

| 3 | 12-15-22 Etchegoyen Deposition Transcript | 1 | S0022 – 0032 |
|---|---|---|---|
| 4 | Uniloc Complaint (California State Court) | 1 | S0033-0049 |
| 5 | Uniloc-Salesforce Settlement & License Agreement | 1 | S0050 - 0086 |
| 6 | 12-21-22 Discovery Hearing Transcript | 1 | S0087 - 0096 |
| 7 | Orange Holdings Articles of Incorporation | 1 | S0097 - 0101 |
| 8 | Orange Holdings Initial List of Officers & Directors | 1 | S0102 - 103 |
| 9 | Orange Holdings Annual List 2019 | 1 | S0104 - 0106 |
| 10 | Orange Holdings Annual List 2020 | 1 | S0107 - 0110 |
| 11 | Orange Holdings Certificate of Reinstatement - Revival | 1 | S0111 - 0115 |
| 12 | WSOU Investments Operating Agreement | 1 | S0116 - 0135 |
| 13 | WSOU Investments A&R Operating Agreement | 1 | S0136 - 0155 |
| 14 | WSOU Investments Second A&R Operating Agreement | 1 | S0156 - 0230 |
| 15 | WSOU Holdings A&R LLC Operating Agreement | 2 | S0231 - 0272 |
| 16 | WSOU Holdings First Amendment to A&R LLC Operating Agreement | 2 | S0273 - 0281 |
| 17 | BP Terrier and ABN Complaint | 2 | S0282 - 0309 |
| 18 | WSOU Capital Partners A&R Operating Agreement | 2 | S0310 - 0331 |
| 19 | WSOU Capital Partners Second A&R Operating Agreement | 2 | S0332 - 0353 |
| 20 | 11-11-22 Salesforce Subpoena to Orange Holdings | 2 | S0354 - 0371 |
| 21 | POS Orange Holding subpoena | 2 | S0372 - 0373 |
| 22 | 11-30-22 Orange Holdings Objections to Salesforce Subpoena | 2 | S0374 - 0438 |

| 23 | Standing Order Governing Proceedings – Patent Cases 091622 | 3 | S0439 - 0458 |
|----|-----------------------------------------------------------|---|--------------|
| 24 | Submitted Third Party Subpoenas Discovery Dispute Chart (2022.12.15) | 3 | S0459 - 0462 |
| 25 | Declaration of Olga Slobodyanyuk | 3 | S0463 - 0467 |
| 26 | Email thread between counsel regarding subpoenas | 3 | S0468 - 0498 |
| 27 | Declaration of Jared Kneitel | 3 | S0499 - 0503 |

DATED: January 13, 2023          McDONALD CARANO LLP


By: */s/ Leigh Goddard*
LEIGH GODDARD, NV Bar #6315
PHILIP MANNELLY, NV Bar #14236
100 West Liberty Street, Tenth Floor
Reno, NV 89501
Telephone: (775) 788-2000
Facsimile: (775) 788-2020
lgoddard@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com

KEVIN JOHNSON (*pro hac vice* forthcoming)
RAY ZADO (*pro hac vice* forthcoming)
SAM STAKE (*pro hac vice* forthcoming)
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
kevinjohnson@quinnemanuel.com
rayzado@quinnemanuel.com
samstake@quinnemanuel.com

*Attorneys for Salesforce, Inc.*

1

## CERTIFICATE OF SERVICE

2

3          I hereby certify, under penalty of perjury, that I am an employee of McDonald Carano LLP

4   and that pursuant to LR 5-3, I caused to be electronically filed on this date a true and correct copy

5   of the foregoing document with the Clerk of the Court using the CM/ECF system. A copy will be

    served via mail and email upon the following:

6
        Morgan E. Pietz                          Jonathan K. Waldrop
7       Julie Goerlinger                         Darcy L. Jones
        Pietz & Shahriari LLP                    Heather S. Kim
8       6700 S. Centinela Ave.                   Jessica C. Sutcliff
        2nd Floor                                Ryan A. Madden
9       Culver City, CA 90230                    333 Twin Dolphin Drive, Suite 200
        *morgan@pstrials.com*                    Redwood Shores, CA 94065
10      *julie@pstrials.com*                     *jwaldrop@kasowitz.com*
                                                 djones@kasowitz.com
11                                               *hkim@kasowitz.com*
                                                 jsutcliff@kasowitz.com
12      Mark Siegmund                            rmadden@kasowitz.com
        Greg Love                                *WSOUvSalesforce@kasowitz.com*
13      STECKLER WAYNE CHERRY &
        LOVE PLLC
14      8416 Old McGregor Road
        Waco, Texas 76712
15      *mark@swclaw.com*
        *greg@swclaw.com*
16

17

18          DATED:  January 13, 2023.

19

20                                               /s/ *Nancy A. Hoy*
                                                 Nancy A. Hoy
21

22
    4872-3667-6937, v. 2
23

24

25

26

27

28

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

# Exhibit 1

# Unified Patents article

# Exhibit 1

(http://eepurl.com/CVHYP)
Sign up today to receive FREE daily patent litigation alerts! ×

NETWORK
EDGE (/EDGE)
BRANDS (HTTPS://WWW.UNIFIEDBRANDS.US)
CONSULTING (HTTPS://WWW.UNIFIED-CONSULTING.COM)
ALIUM (HTTPS://WWW.ALIUM-LLC.COM)
PATENTS (HTTPS://WWW.UNIFIEDPATENTS.COM)
PORTAL (HTTPS://PORTAL.UNIFIEDPATENTS.COM)
PATROLL (HTTPS://PATROLL.UNIFIEDPATENTS.COM/)
ZONES
NPE (/NPE)
SEP (/SEP)
ANALYTICS
OPAL - LANDSCAPE (HTTPS://PORTAL.UNIFIEDPATENTS.COM/STANDARDS/OPAL/HEVC)
OPEN - STANDARDS SUBMISSIONS (HTTPS://PORTAL.UNIFIEDPATENTS.COM/STANDARDS/OPEN/HEVC)
ISIX - BEST LAW FIRMS (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PTAB/ANALYTICS/CASE-LEVEL/ISIX?SORT=-FILING_DATE)
PVIX - PATENT VALUE (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PATENTS/PORTFOLIO)
DATA
UP DAILY (/DOCKET)
PTAB (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PTAB/CASELIST?SORT=-FILING_DATE)
LITIGATION (HTTPS://PORTAL.UNIFIEDPATENTS.COM/LITIGATION/CASELIST)
EXAMINER (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PATENTS/EXAMINER)
PATENTS (HTTPS://PORTAL.UNIFIEDPATENTS.COM/PATENTS/SEARCH)
REEXAM (HTTPS://PORTAL.UNIFIEDPATENTS.COM/EXPARTE/SEARCH?REQUESTER=UNIFIED%20PATENTS%20LLC&REQUESTER=UNIFIED%20PATENTS%2C%20LLC)
NEWS
NEWS & VIEWS (/INSIGHTS)
RPI (/RPI)
OPEN COVID PLEDGE (/OPEN-COVID-PLEDGE)
INSIGHTS WEBINAR (/INSIGHTS-WEBINAR)
ABOUT
FAQ (/FAQ)
SUCCESS (/SUCCESS)
EVENTS (/EVENTS)
OFFICES (/OFFICES)
MEMBERS (/MEMBERS)
TEAM (/TEAM)
JOBS (/JOBS)

JOIN (/JOIN)

March 19, 2021 (/insights/2021/3/18/a-year-of-wsou-craig-etchegoyens-post-uniloc-npe-files-nearly-200-cases)

# A Year of WSOU: Craig Etchegoyen's Post-Uniloc NPE Files Nearly 200 Cases (/insights/2021/3/18/a-year-of-wsou-craig-etchegoyens-post-uniloc-npe-files-nearly-200-cases)

Search

Archive

March 2022 (/insights?month=03-2022)
February 2022 (/insights?month=02-2022)
January 2022 (/insights?month=01-2022)
December 2021 (/insights?month=12-2021)

For most U.S. businesses, the pandemic forced temporary (and sometimes permanent) closures, bankruptcies, and credit crunches. Many were forced to adapt to working remotely, deal with border closures and shortages, or address outbreaks. But for at least one kind of entity, 2020 was a banner year. Patent Assertion Entities (PAEs), entities that exist to acquire and enforce patent assets, filed upwards of 3,744 (https://www.unifiedpatents.com/insights/2020-patent-dispute-report-year-in-review) suits, up more than 12% over 2019 (https://www.unifiedpatents.com/insights/2020-patent-dispute-report-year-in-review)—the vast majority of patent cases filed.  For patent lawyers, at least, business has been booming.

One particularly prolific NPE filed almost 200 suits since March 2020 (https://portal.unifiedpatents.com/litigation/caselist?filed_date=2020-03-01--2021-03-18&plaintiff=Wsou+Investments%2C+LLC+Dba+Brazos+Licensing+And+Development&plaintiff=Wsou+Investments%2C+LLC&plaintiff=Wsou+Investments%2C+LLC+Aka+Brazos+Licensing+And+Development&sort=-filed_date), representing 1 out of every 20 district court cases nationwide: WSOU Investments LLC, d/b/a Brazos Licensing (https://www.brazoslicensing.com) (i.e., "we-sue"). WSOU is a new kind of patent troll in terms of scale—but it's one built on an old file-and-settle model and run by the now-infamous Craig Etchegoyen (https://www.linkedin.com/in/craig-etchegoyen-aa8a07199/) (the guy behind the litigious NPE Uniloc), he's gone from 600 patents being asserted through Uniloc (https://portal.unifiedpatents.com/litigation/caselist?plaintiff=Uniloc&plaintiff=Uniloc+USA%2C+Inc.&plaintiff=Uniloc+Luxembourg+Sa&plaintiff=Uniloc+2017+LLC&plaintiff=Uniloc+Licensing+USA%2C+LLC&plaintiff=Uniloc+Singapore+Private%2C+Ltd.&plaintiff=Uniloc+2017&sort=-filed_date) to a web of over 15,000 Nokia and Alcatel-Lucent patents and applications from over 4,500 patent families. Most of the patents in the portfolio (and most of the patents asserted) relate to telecommunications and digital data processing and transmission, although they cover a range of fields, including wireless networks, video games, and image processing and communication. Over 5,000 of these patents are US Patents (https://portal.unifiedpatents.com/patents/search?assignee_current=Wsou+Investments+LLC):



Patents by Country

November 2021 (/insights?month=11-2021)
October 2021 (/insights?month=10-2021)
September 2021 (/insights?month=09-2021)
August 2021 (/insights?month=08-2021)
July 2021 (/insights?month=07-2021)
June 2021 (/insights?month=06-2021)
May 2021 (/insights?month=05-2021)
April 2021 (/insights?month=04-2021)
March 2021 (/insights?month=03-2021)
February 2021 (/insights?month=02-2021)
January 2021 (/insights?month=01-2021)
December 2020 (/insights?month=12-2020)
November 2020 (/insights?month=11-2020)
October 2020 (/insights?month=10-2020)
September 2020 (/insights?month=09-2020)
August 2020 (/insights?month=08-2020)
July 2020 (/insights?month=07-2020)
June 2020 (/insights?month=06-2020)
May 2020 (/insights?month=05-2020)
April 2020 (/insights?month=04-2020)
March 2020 (/insights?month=03-2020)
February 2020 (/insights?month=02-2020)

SFDC01017945
S0003

WSOU takes a "darken-the-skies" approach to litigation that forces operating companies to either settle or fight, on average, eight lawsuits at once. One defendant, Huawei (https://www.huawei.com/us/), has the unrelished honor of finding itself defending against 20 of these patents in dozens of suits, with Google (https://www.google.com) close behind at 15.



Rather than assert a few related patents against similar accused products or make any attempt to consolidate or streamline matters for the courts, WSOU instead clogs them, running up court costs and concerns with multiple single-patent cases against a wide variety of different accused products, relying on patents from different families for each defendant. Indeed, when accounting for transfers, 98% of the patents asserted come from unique families.

WSOU appears to be picking defendants off in a way that prevents any sort of joint defense, common interest, or other means of defending themselves, and then seeking to license the whole shebang seriatim, keeping all discussions separate and isolated. To wit, WSOU has not asserted the same patent twice against different defendants.

It isn't hard to see WSOU's play here. By filing individual suits involving different patents, WSOU makes it expensive to perform prior art searches and develop non-infringement and invalidity contentions for each case. Accounting for refilings and transfers (which are often involuntary), WSOU has filed over 90% of its cases in the Western District of Texas (https://portal.unifiedpatents.com/litigation/caselist?court=Texas+Western+District+Court&plaintiff=WSOU&sort=-filed_date), a known hotbed for PAEs ever since a particular Waco judge has created a reputation of hoarding patent cases with promises of fast resolution, even despite repeated admonitions (http://www.cafc.uscourts.gov/sites/default/files/opinions-orders/20-135.ORDER.11-9-2020_1682410.pdf) from the Federal Circuit (http://www.cafc.uscourts.gov/sites/default/files/opinions-orders/21-118.ORDER.3-8-2021_1744826.pdf).



January 2020 (/insights?month=01-2020)
December 2019 (/insights?month=12-2019)
November 2019 (/insights?month=11-2019)
October 2019 (/insights?month=10-2019)
September 2019 (/insights?month=09-2019)
August 2019 (/insights?month=08-2019)
July 2019 (/insights?month=07-2019)
June 2019 (/insights?month=06-2019)
May 2019 (/insights?month=05-2019)
April 2019 (/insights?month=04-2019)
March 2019 (/insights?month=03-2019)
February 2019 (/insights?month=02-2019)
January 2019 (/insights?month=01-2019)
December 2018 (/insights?month=12-2018)
November 2018 (/insights?month=11-2018)
October 2018 (/insights?month=10-2018)
September 2018 (/insights?month=09-2018)
August 2018 (/insights?month=08-2018)
July 2018 (/insights?month=07-2018)
June 2018 (/insights?month=06-2018)
May 2018 (/insights?month=05-2018)
April 2018 (/insights?month=04-2018)
March 2018 (/insights?month=03-2018)

SFDC01017946
S0004



February 2018 (/insights?month=02-2018)

January 2018 (/insights?month=01-2018)

December 2017 (/insights?month=12-2017)

November 2017 (/insights?month=11-2017)

October 2017 (/insights?month=10-2017)

September 2017 (/insights?month=09-2017)

August 2017 (/insights?month=08-2017)

July 2017 (/insights?month=07-2017)

June 2017 (/insights?month=06-2017)

May 2017 (/insights?month=05-2017)

April 2017 (/insights?month=04-2017)

March 2017 (/insights?month=03-2017)

February 2017 (/insights?month=02-2017)

January 2017 (/insights?month=01-2017)

December 2016 (/insights?month=12-2016)

November 2016 (/insights?month=11-2016)

October 2016 (/insights?month=10-2016)

September 2016 (/insights?month=09-2016)

August 2016 (/insights?month=08-2016)

July 2016 (/insights?month=07-2016)

June 2016 (/insights?month=06-2016)

May 2016 (/insights?month=05-2016)

By litigating in well-known "rocket dockets" where it can, WSOU makes it difficult for defendants to meet the statutory requirements for filing IPRs, and filing all of those IPRs would not only be expensive (the filing fees alone, not including the cost of attorneys and experts, would cost about $250,000 for the average campaign per defendant, assuming one IPR per patent), but also somewhat superfluous when the presiding judge over almost all of the cases has a avowed policy of refusing to stay (https://www.patentprogress.org/2021/03/15/one-case-all-the-problems-vlsi-v-intel-exemplifies-current-issues-in-patent-litigation/) a case unless the defendant somehow manages to petition for *inter partes* review before they are even sued.

While the effectiveness of this boil-the-ocean approach is questionable, it certainly was foreseeable. With a one-year statutory bar to file any kind of expensive defensive challenge (a year being pretty generous under *Apple v. Fintiv* (https://www.unifiedpatents.com/insights/2020-ptab-discretionary-denials-report)), and no obligation for patent owners to forewarn defendants about their patent portfolios, a patent owner would almost be foolish *not* to quietly build up a line of cases to spring on defendants all at once, and use the filing as a sort of ransoming starting point for negotiations once companies are staring down the barrel of millions of dollars in court costs. When the cost of defense can be upwards of $4,000,000 (https://www.aipla.org/detail/news/2019/09/12/the-2019-report-of-the-economic-survey-is-here!) over three years, while it's still hard to comprehend, defendants can at least budget ahead for the defense.  When the cost is multiplied by a dozen and sprung upon you on questionable patents, it can be a little harder to justify defending oneself.

Theoretically, this strategy should also be relatively expensive for a plaintiff. But WSOU has this down to a science. Using a firm that does work almost exclusively for Uniloc and WSOU, his hope is that the high costs of defense force defendants to surrender to settlement early.  This is particularly true given WSOU's relationship with RPX (https://www.rpxcorp.com/). For an additional subscription, RPX (https://www.rpxcorp.com/) (it appears) offers settlements for WSOU's entire portfolio, creating a cycle of monetization that is antithetical to patent assertion deterrence.

WSOU is managed by Craig Etchegoyen (https://www.linkedin.com/in/craig-etchegoyen-aa8a07199/), surfing-prodigy (https://www.latimes.com/archives/la-xpm-1989-07-20-sp-5262-story.html)-turned-PAE-manager. Etchegoyen is the former CEO of Uniloc (http://www.uniloc.com/), another prolific PAE. In December 2020, it was discovered that based on a contract clause that gave a litigation financier a right to take ownership of patents if certain revenue targets were not met, Uniloc did not have standing to assert its patents (https://casetext.com/case/uniloc-usa-inc-v-apple-inc-10). WSOU may be subject to similar contract clauses, and discovery into ownership and chain of title is already in process. A defendant would be wise to pore through assignment and financing agreements to catch any chink in the chain of ownership—the assignment frames on record with the USPTO (https://assignment.uspto.gov/patent/index.html#/patent/search/result?id=WSOU&type=patAssigneeName) do not, for instance, show a clear (https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=6721554&type=patNum) chain of title (https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=8958358&type=patNum) for many

SFDC01017947
S0005

(https://assignment.uspto.gov/patent/index.html#/patent/search/resultAbstract?id=6763068&type=patNum) of the WSOU patents. Rumor has it that he tried and failed to find a buyer for the portfolio, bringing unreasonable demands to the table. It's likely that his current demands are equally unreasonable, but he's leveraging the cost of litigation as far as it can be leveraged in an attempt to avoid any sort of honest look at the value of his portfolio.

It is too early to tell if WSOU's strategy will pan out, but most defendants have not yet taken advantage of the *inter partes* review process, presumably because the costs there would extend into the millions just to file, and with the substantial uncertainty surrounding Fintiv and other USPTO flexes of discretion, it's unclear if even meritorious challenges will be given the time of day. Of the 140+ patents asserted, so far just 12 PTAB challenges have been filed (https://portal.unifiedpatents.com/ptab/caselist?patent_owners=WSOU&patent_owners=Wsou+Investments%2C+LLC+D%2Fb%2Fa+Brazos+Licensing+And+Development&patent_owners=Wsou+Investments%2C+LLC&sort=filing_date), including one IPR by Unified Patents (https://portal.unifiedpatents.com/ptab/case/IPR2021-00378) against a video codec patent. Unified (http://www.unifiedpatents.com) has also posted a number of PATROLL (https://patroll.unifiedpatents.com/contests) contests (US8209411 (https://patroll.unifiedpatents.com/contests/sGbFPwTZRxLdHmQnk), US7409715 (https://patroll.unifiedpatents.com/contests/YTKC6tWGkRRnJckc9)) and continues to monitor WSOU's monetization activities.

Tagged: WSOU (/insights?tag=WSOU), Reports (/insights?tag=Reports), NPE (/insights?tag=NPE)

♥ 2 Likes   ≺ Share

**Newer Post**
$2,500 for prior art on mCom IP (/insights/2021/3/23/2500-for-prior-art-on-mcom-ip)

**Older Post**
FireNet Technologies patent held unpatentable (/insights/2021/3/18/firenet-technologies-patent-held-unpatentable)

April 2016 (/insights?month=04-2016)
March 2016 (/insights?month=03-2016)
February 2016 (/insights?month=02-2016)
January 2016 (/insights?month=01-2016)
December 2015 (/insights?month=12-2015)
November 2015 (/insights?month=11-2015)
October 2015 (/insights?month=10-2015)
September 2015 (/insights?month=09-2015)
August 2015 (/insights?month=08-2015)
July 2015 (/insights?month=07-2015)
June 2015 (/insights?month=06-2015)
May 2015 (/insights?month=05-2015)
April 2015 (/insights?month=04-2015)
March 2015 (/insights?month=03-2015)
February 2015 (/insights?month=02-2015)
January 2015 (/insights?month=01-2015)
December 2014 (/insights?month=12-2014)
November 2014 (/insights?month=11-2014)
September 2014 (/insights?month=09-2014)

Email Address

SUBSCRIBE

SFDC01017948
S0006

A Year of WSOU: Craig Etchegoyen's Post-Uniloc NPE Files Nearly 200 Cases — Unifi...   Page 6 of 6

Or Subscribe to Our RSS
(http://www.unifiedpatents.com/insights?
format=rss)

HOME (/HOME)
SOLUTION (/NPE)
NEWS (/NEWS)
ABOUT (/ABOUT)
JOIN (/JOIN)

(650) 999-0889   INFO@UNIFIEDPATENTS.COM (MAILTO:INFO@UNIFIEDPATENTS.COM)

*Copyright © 2021 Unified Patents, LLC.  All rights reserved.*
Legal (/term-of-services) | Privacy Policy (/privacy-policy) | DMCA (http://unifiedpatents.com/dmca)



https://www.unifiedpatents.com/insights/2021/3/18/a-year-of-wsou-craig-etchegoyens-post-uniloc-np...

SFDC01017949
S0007

# Exhibit 2

# 11-17-22
# Shanus
# Deposition
# Transcript

# Exhibit 2

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0016

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0021

# Exhibit 3

# 12-15-22 Etchegoyen Deposition Transcript

# Exhibit 3

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0025

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0028

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

# Exhibit 4

# Uniloc complaint

# Exhibit 4

S0033

Electronically Filed by Superior Court of California, County of Orange, 10/28/2022 04:38:00 PM.
30-2022-01287254-CU-BC-CJC - ROA # 20 - DAVID H. YAMASAKI, Clerk of the Court By S. Juarez, Deputy Clerk.

1  Ekwan E. Rhow (State Bar No. 174604)
       erhow@birdmarella.com
2  Jong-min Choi (State Bar No. 329474)
       jmchoi@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
4  DROOKS, LINCENBERG & RHOW, P.C.
   1875 Century Park East, 23rd Floor
5  Los Angeles, California 90067-2561
   Telephone: (310) 201-2100
6  Facsimile: (310) 201-2110
7
8  Attorneys for Plaintiffs Uniloc Licensing
   USA LLC and Craig Etchegoyen
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11            COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

12

13  UNILOC LICENSING USA LLC, a            CASE NO. 30-2022-01287254-CU-BC-CJC
    Delaware limited liability company;             30-2022-01287254-CU-BC-
14  CRAIG ETCHEGOYEN, an individual;       CJC      Judge Deborah Servino

15                Plaintiffs,              ASSIGNED FOR ALL PURPOSES TO:
                                                   DEBORAH SERVINO
16
17            vs.                          [REDACTED] COMPLAINT FOR
                                           DAMAGES:
18  UNILOC 2017 LLC, a Delaware limited
    liability company; FORTRESS           1) BREACH OF CONTRACT;
19  INVESTMENT GROUP LLC, a Delaware      2) PROMISSORY ESTOPPEL; AND
    limited liability company;            3) PROMISSORY FRAUD
20
21                Defendants.
                                           DEMAND FOR JURY TRIAL
22

23

24

25

26

27

28

3829522.1

S0034

## **INTRODUCTION**

1.    This case is about Fortress Investment Group and its broken promises to Craig Etchegoyen.

2.    Fortress Investment Group ("Fortress"), one of the world's leading investment firms, and Craig Etchegoyen ("Etchegoyen"), agreed to work together to monetize a valuable patent portfolio that Etchegoyen had built. In exchange for Etchegoyen's help, Fortress made promises of significant compensation to Etchegoyen.

3.    Etchegoyen held up his part of the bargain, and as a result, Fortress has profited handsomely from this relationship. Yet, after having so profited, its promises have come up empty.

4.    Etchegoyen, and his corporate entity Uniloc Licensing USA LLC ("Uniloc Licensing"), bring this action to hold Fortress to its word.

## **THE PARTIES**

5.    Uniloc Licensing is a Delaware limited liability company with its principal place of business in Plano, Texas.

6.    Fortress is a Delaware limited liability company with its principal place of business in New York, New York.

7.    Uniloc 2017 ("Uniloc") is a Delaware limited liability company with its principal place of business in Newport Beach, California, in the County of Orange.

8.    Craig Etchegoyen is an individual who resides in California and Texas.

## **JURISDICTION AND VENUE**

9.    Jurisdiction is proper in this Court because Defendant Uniloc has its principal place of business in Orange County, California, and the main events giving rise to this action occurred in Orange County, California. Venue is proper in this judicial district for the same reason.

## **FACTUAL ALLEGATIONS**

### **Craig Etchegoyen Builds, And Then Sells, A Patent Monetization Powerhouse**

10.    Etchegoyen founded "Uniloc" (the "Original Uniloc") in 2003, and over

2

[REDACTED] COMPLAINT

S0035

time, grew it into a successful patent monetization entity through the strategic acquisition of patent portfolios and the skillful assertion of those patent rights.

11.     By 2017, Original Uniloc had grown to a global network of various companies covering key patent jurisdictions, operating across the world. Original Uniloc was also one of the most active filers of patent lawsuits, acting as plaintiff in hundreds of patent cases in the United States alone.

12.     In 2017, Fortress approached Etchegoyen, expressing interest in purchasing Original Uniloc.

13.     Fortress formed and established Uniloc 2017 LLC ("Uniloc") as a special purpose entity for the purpose of the transaction. Uniloc was to be, and did end up being, Fortress's vehicle for entering into the patent monetization business with Etchegoyen.

14.     Fortress, by itself or through entities it owned and controlled, owned the controlling interest in Uniloc. In addition, Fortress employees also composed a supermajority on Uniloc's Board of Managers. Simply put, Uniloc was a Fortress entity.

15.     In a transaction structured as an Asset Purchase Agreement, between Uniloc on the one hand for Fortress and Uniloc Luxembourg S.A. on the other for Etchegoyen, Uniloc acquired substantially all of Original Uniloc's patent portfolios and any interest connected with them.

16.     As a part of the transaction, Uniloc Licensing, which remained Etchegoyen's entity, entered into a series of agreements with Uniloc, the Fortress-owned entity created for the transaction.

17.     The series of agreements included a License Agreement between Uniloc and Uniloc Licensing, which contemplated that Uniloc Licensing would assert Uniloc's patents, and then transfer the proceeds of such efforts back to Uniloc in exchange for a service fee to be separately negotiated. A copy of the License Agreement is attached hereto as *Exhibit 1*.

18.     The transaction closed in October 2018.

19.     After the transaction, Uniloc separately employed Etchegoyen to serve as the

1    Chief Executive Officer of Uniloc.

2                    **Fortress Establishes and Maintains Close Control of Uniloc**

3          20.     Fortress established firm control over Uniloc, treating it in effect as a

4    division of Fortress.

5          21.     Uniloc's Board of Managers, other than Craig Etchegoyen, were selected

6    entirely by Fortress, and were all individuals employed and controlled by Fortress.

7          22.     Patrick Diaz, the newly installed Chief Financial Officer of Uniloc, was

8    employed by Fortress during all relevant time, received compensation from Fortress while

9    receiving only nominal compensation from Uniloc, and acted at all times at Fortress's

10   direction.

11         23.     On information and belief, Fortress directed its employees who sat on

12   Uniloc's Board to protect and promote Fortress' interests ahead of Uniloc's, including by

13   funneling money obtained by Uniloc to Fortress. Fortress accomplished this by directing

14   Uniloc to structure settlement agreements so that the accused infringer defendants would

15   make payments to *Fortress*, not Uniloc, in consideration of Uniloc dismissing its patent

16   infringement complaints.

17         24.     An illustrative example of Fortress' complete control over Uniloc was its

18   settlement with ███████████████     which terms provided that ███████████████

19   ███████████████████████████████████████████

20   ███████████████████████████████████

21   **Fortress and Uniloc Promise Uniloc Licensing a Bonus Payment—And Then Confirm**
     **The Promise Multiple Times**

22
23         25.     On February 12, 2019, Erez Levy, a member of Uniloc's Board of Managers

     as well as a Fortress employee, had a verbal conversation with Etchegoyen by phone,
24
     calling Etchegoyen from Uniloc's Newport Beach office.
25
           26.     During that conversation, Levy promised Etchegoyen that to ensure that
26
     Uniloc Licensing would use its best efforts to retain and hire key employees, Fortress
27
     would pay Uniloc Licensing a bonus amounting to ten percent of the patent monetization
28

4
                              [REDACTED] COMPLAINT

S0037

1   revenue that Licensing collected on behalf of Uniloc, so that Uniloc Licensing would have

2   a "bonus pool" for Etchegoyen and his key employees, payable upon a revenue event.

3        27.    For Uniloc, a "revenue event" meant either a settlement payment by a patent

4   infringement defendant to Uniloc or an affiliated entity, or a judgment collected from a

5   patent infringement action in Uniloc's favor.

6        28.    Levy promised that Fortress would accomplish this by directing and casuing

7   Uniloc to establish a bonus pool, which would be comprised of ten percent of the patent

8   monetization revenue that Uniloc Licensing collected on behalf of Uniloc, separate and

9   apart from any service fee under the License Agreement, for as long as the License

10   Agreement remained in place.

11        29.    In the same conversation, Levy further promised Etchegoyen that Uniloc's

12   Board would, in the near future, adopt a resolution memorializing Uniloc's commitment to

13   the bonus pool.

14        30.    Levy, who also occupied a seat in Uniloc's Board of Managers, told

15   Etchegoyen that Fortress's promise meant that the decision by the Uniloc's Board of

16   Managers would be a foregone conclusion, because Fortress had total control over Uniloc,

17   even if a nominal board approval would be required for payment.

18        31.    Etchegoyen expressed his agreement, stating that Uniloc Licensing would

19   use its best efforts to retain and hire its key employees, and motivate Uniloc Licensing's

20   employees by informing them of the ten percent bonus.

21        32.    The next day, on February 13, 2019, Etchegoyen confirmed this promise

22   with Levy in a text message. In response to Etchegoyen's reference to "the 10% pool we

23   agreed to yesterday," Erez said enthusiastically: "Great agree."

24        33.    Two days later, on February 15, 2019, Patrick Diaz confirmed once again

25   that Uniloc would pay the bonus, emailing a spreadsheet to Etchegoyen that showed a

26   forecast of Uniloc's cashflow, and the amount of the bonus pool.

27        34.    Etchegoyen communicated Fortress and Uniloc's promise to the key

28   employees at Uniloc Licensing.

35.     On March 11, 2019, Uniloc's Board adopted a resolution acknowledging Uniloc Licensing's proposal to establish a bonus pool, and authorizing Uniloc to pay the ten percent bonus to Uniloc Licensing whenever the Board directed it to do so.

36.     On the same day, members of Uniloc's Board, including Levy, assured Etchegoyen that the resolution was a necessary preparatory step to commit to the ten percent bonus, and that at Fortress's direction, Uniloc's Board would authorize Uniloc to pay the ten percent bonus to Uniloc Licensing upon a revenue event as promised. As Levy and other Fortress representatives put it, the approval by Uniloc's Board would be a mere ministerial formality with a foregone outcome.

37.     In or about April 2019, Patrick Diaz, Uniloc's CFO and *also* a Fortress employee, once again assured Etchegoyen that Fortress would direct and cause Uniloc to pay the ten percent bonus, sending Etchegoyen a spreadsheet showing the projected amount of the bonus under various hypotheticals, including one that, upon collection of an additional $100 million from that date, would have entitled Uniloc Licensing, after various deductions, to a bonus of $11,036,998.

38.     In May 2019, Eran Zur, head of Fortress's intellectual property monetization group and another member of Uniloc's Board of Managers, gave another reassurance to Etchegoyen that Fortress would ensure Uniloc Licensing's bonus would be paid:



[REDACTED] COMPLAINT

S0039

1    39.    By December 16, 2019, the bonus pool had grown to $1,197,000, which

2    remained unpaid despite being collected. In a meeting of the Board on the same date,

3    Etchegoyen confirmed with the rest of the Board members (who were also employees of

4    Fortress) that the payable bonus pool had grown to that amount. The Board members

5    acknowledged that the amount was due to Uniloc Licensing.

6    40.    In another Board Meeting on July 31, 2020, Etchegoyen once again informed

7    Uniloc's Board, composed of Fortress representatives, that the Board had agreed to pay the

8    ten percent bonus, which had now grown to $3.7 million, and which remained unpaid.

9    41.    The Board members agreed that the bonus pool had grown to $3.7 million,

10   and acknowledged that the amount was due to Uniloc Licensing.

11   42.    In the same Board meeting, Etchegoyen also reiterated to the Board that

12   Uniloc Licensing's key employees had relied on the bonus pool in, at least, continuing to

13   work for Uniloc Licensing. Similarly, Uniloc Licensing had relied on the bonus pool,

14   electing to continue the License Agreement, and refraining from seeking higher service

15   fees under the agreement.

16   43.    The Board members acknowledged the statement and never expressed

17   disagreement that Uniloc Licensing and its key employees had justifiably relied on

18   Uniloc's promise to pay into the ten percent bonus pool.

19                          **The ▮▮▮▮ Settlement**

20   44.    Independently of Uniloc Licensing, Fortress made and then broke another

21   promise—this time one made to Etchegoyen personally.

22   45.    In late 2018, Uniloc was involved in litigation against ▮▮▮▮▮▮

23   ("▮▮▮▮ one of the world's largest companies, asserting Uniloc's patent rights.

24   46.    Etchegoyen, as the then-CEO of Uniloc, played an important role in the

25   settlement negotiations with ▮▮▮▮ including by negotiating with ▮▮▮▮

26   47.    In ▮▮▮▮ 2018, ▮▮▮▮ requested that Etchegoyen *personally* sign a

27   proposed settlement agreement ("▮▮▮▮ Settlement Agreement") between Uniloc and

28   ▮▮▮▮ and assume certain obligations, including a covenant to not advise, assist, or

3829522.1
                                    7
                          [REDACTED] COMPLAINT

S0040

1  otherwise support any patent action against ▮▮▮▮ within a defined scope of the

2  settlement agreement.

3       48.    ▮▮▮▮ representatives indicated to Uniloc and Fortress that it would refuse

4  to execute the settlement agreement without Etchegoyen.

5       49.    The proposed settlement agreement did not provide any direct benefit to

6  Etchegoyen personally. ▮▮▮▮ offered no payment to Etchegoyen personally; only

7  Uniloc stood to receive any money.

8       50.    Eran Zur asked for a personal meeting with Etchegoyen at Uniloc's offices in

9  Newport Beach, California.

10       51.    That meeting took place in January 2019. At that meeting, Eran Zur made

11  the offer to Etchegoyen: if Etchegoyen personally signed the ▮▮▮▮ Settlement

12  Agreement, Fortress would pay Etchegoyen $4 million, separate and apart from any

13  payment otherwise owed to Etchegoyen or any entity controlled by him.

14       52.    Etchegoyen agreed. Later, he personally signed the ▮▮▮▮ Settlement

15  Agreement, assuming certain obligations under that agreement.

16       53.    Fortress and Uniloc partially kept their promise: at Fortress's direction,

17  Uniloc paid $1.3 million to Etchegoyen. However, Fortress and Uniloc have refused, and

18  continue to refuse, to pay the remaining $2.7 million.

19       **Uniloc Fires Etchegoyen, And Refuses To Pay For Uniloc Licensing's Success**

20       54.    Meanwhile, Uniloc Licensing and its employees (including Etchegoyen)

21  continued to rely on Uniloc's promise to pay the bonus.

22       55.    Uniloc Licensing, in reliance of Uniloc's promises, assured its key

23  employees that the bonus would be paid, and used its best efforts to retain those

24  employees.

25       56.    By early 2021, Uniloc Licensing's efforts had brought success greater than

26  even Fortress's and Uniloc's most optimistic predictions.

27       57.    Despite this success, on February 16, 2021, at Fortress's direction, Uniloc's

28  Board terminated Etchegoyen's employment as Uniloc's CEO.

1     58.   In ███ of 2021, Uniloc Licensing secured another significant settlement

2   against ███   At Fortress' direction, however, Uniloc negotiated and executed a

3   settlement agreement in which ████████████████████████████████████

4   ██████████████████████████████████████████████

5   ███████████████████████████

6     59.   Fortress assured Etchegoyen that the payment to Fortress, instead of Uniloc,

7   would have no impact on any payments due to Uniloc Licensing, and that Fortress would

8   duly record the payment as Uniloc's.

9     60.   On information and belief, Fortress failed to transfer any of the settlement

10   money to Uniloc; the Fortress employees who populate Uniloc's board made this decision

11   because it would increase their own bonuses within Fortress, while any harm to Uniloc

12   would have no impact on them given that their compensations were coming from Fortress.

13     61.   As of June 2021, the amount of patent monetization revenue subject to the

14   ten percent bonus pool that Uniloc Licensing had collected on behalf of Uniloc totaled

15   $195 million. Accordingly, Uniloc Licensing would be entitled to a bonus payment of

16   $19.5 million from Uniloc.

17     62.   Uniloc Licensing has requested that Uniloc pay the ten percent bonus.

18     63.   Uniloc has refused, and continues to refuse, to pay the promised bonus.

19     64.   Uniloc Licensing has requested that Fortress cause Uniloc to pay the ten

20   percent bonus.

21     65.   Fortress has refused, and continues to refuse, to pay the promised bonus.

22                          **FIRST CAUSE OF ACTION**

23            **(Breach of Contract (against all Defendants) By Uniloc Licensing)**

24     66.   The foregoing paragraphs are incorporated by reference.

25     67.   Uniloc, Fortress, and Uniloc Licensing entered into a contract, requiring

26   Fortress to cause Uniloc to pay, and for Uniloc to pay, ten percent of Uniloc Licensing's

27   collections as a bonus, and requiring Uniloc Licensing to use its best efforts to retain and

28   incentivize its key employees.

3829522.1

9

S0042

1     68.    Uniloc Licensing performed its obligations by using its best efforts to retain
2  and incentivize its key employees, including by informing them of the "bonus pool" out of
3  which they could expect greater bonuses.

4     69.    In the alternative, Uniloc Licensing was excused from having to use the
5  bonus pool to retain and incentivize its key employees, because of Fortress and Uniloc's
6  failure to pay any bonus.

7     70.    Fortress and Uniloc failed to pay the ten percent bonus.

8     71.    As a direct and proximate result of Fortress and Uniloc's failure to pay the
9  bonus, Uniloc Licensing has suffered, and continues to suffer, harm in an amount to be
10  proven at trial, but in no event less than $19.5 million.

11                       **SECOND CAUSE OF ACTION**

12        **(Promissory Estoppel (against all Defendants) By Uniloc Licensing)**

13     72.    The foregoing paragraphs are incorporated by reference.

14     73.    Uniloc and Fortress made a clear promise that Uniloc would pay ten percent
15  of Uniloc Licensing's collections on behalf of Uniloc as a bonus.

16     74.    The promise was intended to, and did, induce reliance from Uniloc
17  Licensing.

18     75.    Uniloc Licensing suffered substantial detriment by foregoing other
19  opportunities, making other efforts to retain and incentivize its key employees, and
20  accepting a lower service fee than it would have if no bonus pool had existed.

21     76.    As a direct and proximate result of Fortress and Uniloc's failure to pay the
22  bonus, Uniloc Licensing has been damaged in an amount to be proven at trial.

23                       **THIRD CAUSE OF ACTION**

24        **(Promissory Fraud (against all Defendants) By Uniloc Licensing)**

25     77.    The foregoing paragraphs are incorporated by reference.

26     78.    Fortress and Uniloc made a promise to Uniloc Licensing to pay ten percent
27  of Uniloc Licensing's collections as a bonus to Uniloc Licensing.

28     79.    At the time Fortress and Uniloc made the promise, Uniloc did not intend to

1    perform this promise.

2         80.    Fortress and Uniloc intended that Uniloc Licensing rely on this promise.

3         81.    Uniloc Licensing reasonably relied on this promise.

4         82.    Fortress did not cause Uniloc to pay, and Uniloc did not pay, the ten percent

5    bonus that had been promised.

6         83.    As a direct and proximate result of Uniloc Licensing's reliance on Fortress

7    and Uniloc's false promise, Uniloc Licensing has been harmed in an amount to be proven

8    at trial.

9                        **FOURTH CAUSE OF ACTION**

10                  **(Breach of Contract (against all Defendants) By Etchegoyen)**

11        84.    The foregoing paragraphs are incorporated by reference.

12        85.    Uniloc, Fortress, and Etchegoyen entered into a contract, requiring

13   Etchegoyen to personally sign the ▉▉▉▉ Settlement Agreement, and requiring Fortress

14   and/or Uniloc to pay him $4 million in exchange.

15        86.    Etchegoyen performed his obligations under the contract, including by

16   personally signing the ▉▉▉ Settlement Agreement.

17        87.    Uniloc has paid $1.3 million to Etchegoyen but has failed to pay the balance.

18        88.    Fortress has also failed to pay the balance.

19        89.    As a direct and proximate result of Fortress and Uniloc's failure to pay the

20   promised amount, Etchegoyen has suffered, and continues to suffer, harm in an amount to

21   be proven at trial, but in no event less than $2.7 million.

22                        **FIFTH CAUSE OF ACTION**

23                  **(Promissory Fraud (against all Defendants) By Etchegoyen)**

24        90.    The foregoing paragraphs are incorporated by reference.

25        91.    Uniloc and Fortress made a promise to Etchegoyen to pay $4 million in

26   exchange for his signature on the ▉▉▉▉ Settlement Agreement.

27        92.    At the time Uniloc and Fortress made the promise, they did not intend to

28   perform this promise.

S0044

93.     Uniloc and Fortress intended that Etchegoyen rely on this promise.

94.     Etchegoyen reasonably relied on this promise and signed the ███
Settlement Agreement.

95.     Uniloc never paid, and Fortress, despite having the ability, never instructed
Uniloc to pay, the full $4 million. Instead, they paid only $1.3 million.

96.     As a direct and proximate result of Uniloc Licensing's reliance on Uniloc's
false promise, Etchegoyen has been harmed in an amount to be proven at trial, but no less
than $2.7 million.

## SIXTH CAUSE OF ACTION

### (Promissory Estoppel (against all Defendants) By Etchegoyen)

97.     The foregoing paragraphs are incorporated by reference.

98.     Uniloc and Fortress made a promise to Etchegoyen to pay $4 million in
exchange for personally entering into the ███ Settlement Agreement.

99.     The promise was intended to, and did, induce reliance from Uniloc
Licensing.

100.    Etchegoyen suffered substantial detriment by assuming personal obligations
under the ███ Settlement Agreement, which required him to forego other potential
opportunities to collect further patent monetization revenues against ███

101.    As a direct and proximate result of Uniloc's failure to pay the bonus, Uniloc
Licensing has been damaged in an amount to be proven at trial.


## PRAYER FOR RELIEF

Accordingly, Plaintiffs pray for judgment against Uniloc and Fortress as follows.

1.      An award of **compensatory damages** in an amount to be proven at trial;

2.      An award of **consequential damages** in an amount to be proven at trial;

3.      An award of **exemplary damages** in an amount to be proven at trial;

4.      Interest, expenses, costs of suit, and attorneys' fees to the extent permitted by
law; and,

1      5.     Any other relief the Court may deem just and proper.

2

3 DATED:  October 28, 2022      Ekwan E. Rhow

4                            Jong-min Choi

                           Bird, Marella, Boxer, Wolpert, Nessim,

5                            Drooks, Lincenberg & Rhow, P.C.

6

7                  By:  _____

8                            Ekwan E. Rhow

9                      Attorneys for Plaintiffs

3829522.1

13

[REDACTED] COMPLAINT

S0046

1

## DEMAND FOR JURY TRIAL

2        Plaintiffs demand a jury trial for all issues so triable.

3

4   DATED:  October 28, 2022          Ekwan E. Rhow
                                       Jong-min Choi
5                                      Bird, Marella, Boxer, Wolpert, Nessim,
                                       Drooks, Lincenberg & Rhow, P.C.
6

7

8                                 By:  _____
9                                           Ekwan E. Rhow
                                       Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3829522.1                          14
                           [REDACTED] COMPLAINT

1    **PROOF OF SERVICE**

2    ***Uniloc Licensing USA, et al. v. Uniloc 2017, et al.***
     **Case No. 30-2022-01287254-CU-BC-CJC**

3    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4
         At the time of service, I was over 18 years of age and not a party to this action.  I
5    am employed in the County of Los Angeles, State of California.  My business address is
     1875 Century Park East, 23rd Floor, Los Angeles, CA 90067-2561.
6
         On October 28, 2022, I served the following document(s) described as
7    **[REDACTED] COMPLAINT FOR DAMAGES** on the interested parties in this action
     as follows:
8
                              **SEE ATTACHED SERVICE LIST**
9
         **BY ELECTRONIC SERVICE:**  I served the document(s) on the person listed in
10   the Service List by submitting an electronic version of the document(s) to First Legal,
     through the user interface at www.firstlegal.com.
11
         **BY FEDEX:**  I enclosed said document(s) in an envelope or package provided by
12   FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the
     envelope or package for collection and overnight delivery at an office or a regularly
13   utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized
     by FedEx to receive documents.
14
         I declare under penalty of perjury under the laws of the State of California that the
15   foregoing is true and correct.

16       Executed on October 28, 2022, at Los Angeles, California.

17

18                                              _____
                                                       /s/ Bora Lee
19                                              Bora Lee

20

21

22

23

24

25

26

27

28

3829522.1

[REDACTED] COMPLAINT

S0048

**SERVICE LIST**
*Uniloc Licensing USA, et al. v. Uniloc 2017, et al.*
**Case No. 30-2022-01287254-CU-BC-CJC**

Kathryn "Kate" Gusmer Cole
Moore & Van Allen
100 North Tryon Street
Suite 4700
Charlotte, NC  28202-4003
Telephone: 704.331.1045
Email: katecole@mvalaw.com
**Counsel for Defendant Uniloc 2017 LLC**

3829522.1

16

[REDACTED] COMPLAINT

S0049

# Exhibit 5

# Uniloc License Agreement

# Exhibit 5

S0050

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0055

*Filed Under Seal*

*Filed Under Seal*

S0056

*Filed Under Seal*

*Filed Under Seal*

S0057

*Filed Under Seal*

*Filed Under Seal*

S0058

*Filed Under Seal*

*Filed Under Seal*

S0059

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0061

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0063

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0065

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0067

*Filed Under Seal*

*Filed Under Seal*

S0068

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0070

*Filed Under Seal*

*Filed Under Seal*

S0071

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0073

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0076

*Filed Under Seal*

*Filed Under Seal*

S0077

*Filed Under Seal*

*Filed Under Seal*

S0078

*Filed Under Seal*

*Filed Under Seal*

S0079

*Filed Under Seal*

*Filed Under Seal*

S0080

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0083

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

# Exhibit 6

# 12-21-22
# Discovery Hearing
# Transcript

# Exhibit 6

S0087

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0089

*Filed Under Seal*

*Filed Under Seal*

S0090

*Filed Under Seal*

*Filed Under Seal*

S0091

*Filed Under Seal*

*Filed Under Seal*

S0092

*Filed Under Seal*

*Filed Under Seal*

S0093

*Filed Under Seal*

*Filed Under Seal*

S0094

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0096

# Exhibit 7

# Orange Holdings Articles of Incorporation

# Exhibit 7





**BARBARA K. CEGAVSKE**
Secretary of State
202 North Carson Street
Carson City, Nevada 89701-4201
(775) 684-5708
Website: www.nvsos.gov

## Articles of Incorporation
(PURSUANT TO NRS CHAPTER 78)

| Filed in the Office of | Business Number |
|---|---|
| *[signature]* Barbara K. Cegavske | **E0208572017-0** |
| | Filing Number |
| | **20170190318-12** |
| Secretary of State | Filed On |
| State Of Nevada | **05/01/2017** |
| | Number of Pages |
| | **4** |

{This document was filed electronically.}

USE BLACK INK ONLY - DO NOT HIGHLIGHT                    ABOVE SPACE IS FOR OFFICE USE ONLY

| **1. Name of Corporation:** | ORANGE HOLDINGS |
|---|---|

**2. Registered Agent for Service of Process:** (check only one box)

[X] Commercial Registered Agent: CORPORATE SERVICES OF NEVADA
Name

[ ] Noncommercial Registered Agent   OR   [ ] Office or Position with Entity
(name and address below)                (name and address below)

Name of Noncommercial Registered Agent   OR   Name of Title of Office or Other Position with Entity

| Street Address | City | Nevada | Zip Code |
|---|---|---|---|
| Mailing Address (if different from street address) | City | Nevada | Zip Code |

**3. Authorized Stock:** (number of shares corporation is authorized to issue)

| Number of shares *with* par value: | **100000** | Par value per share: $ | **0.01** | Number of shares *without* par value: | **0** |
|---|---|---|---|---|---|

**4. Names and Addresses of the Board of Directors/Trustees:** (each Director/Trustee must be a natural person at least 18 years of age; attach additional page if more than two directors/trustees)

1) CRAIG S ETCHEGOYEN
Name

| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

2)
Name

| | | | |
|---|---|---|---|
| Street Address | City | State | Zip Code |

**5. Purpose:** (optional; required only if Benefit Corporation status selected)

The purpose of the corporation shall be:
ANY LEGAL PURPOSE

**6. Benefit Corporation:** (see instructions)   [ ] Yes

**7. Name, Address and Signature of Incorporator:** (attach additional page if more than one incorporator)

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

| DON HARMER | X DON HARMER |
|---|---|
| Name | Incorporator Signature |

| 502 NORTH DIVISION STREET | CARSON CITY | NV | 89703 |
|---|---|---|---|
| Address | City | State | Zip Code |

**8. Certificate of Acceptance of Appointment of Registered Agent:**

I hereby accept appointment as Registered Agent for the above named Entity.

| X CORPORATE SERVICES OF NEVADA | 5/1/2017 |
|---|---|
| Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity | Date |

This form must be accompanied by appropriate fees.

Nevada Secretary of State NRS 78 Articles
Revised: 1-5-15

S0098

# ARTICLES OF INCORPORATION

## OF

# ORANGE HOLDINGS

A NEVADA CORPORATION

## KNOW ALL MEN BY THESE PRESENTS:

THE UNDERSIGNED, FOR THE PURPOSE OF FORMING A CORPORATION UNDER THE LAWS OF THE STATE OF NEVADA, RELATING TO THE GENERAL CORPORATION LAW,

## I DO HEREBY CERTIFY THAT:

*FIRST:* THE NAME OF THE CORPORATION SHALL BE:

### ORANGE HOLDINGS

*SECOND:* THE CORPORATION IS AUTHORIZED TO CARRY ON ANY LAWFUL BUSINESS OR ENTERPRISE FOR WHICH CORPORATIONS MAY BE INCORPORATED UNDER THE LAWS OF THE STATE OF NEVADA. THE CORPORATION SHALL HAVE THE SAME POWERS AS AN INDIVIDUAL TO DO ALL THINGS NECESSARY OR CONVENIENT TO CARRY OUT ITS BUSINESS AND AFFAIRS, SUBJECT TO ANY LIMITATIONS OR RESTRICTIONS IMPOSED BY APPLICABLE LAW OR THESE ARTICLES. THE CORPORATION MAY CONDUCT ALL OR ANY PART OF ITS BUSINESS, AND MAY HOLD, PURCHASE, MORTGAGE, LEASE AND CONVEY REAL AND/OR PERSONAL PROPERTY, ANYWHERE IN THE WORLD.

*THIRD:* THE CORPORATION IS AUTHORIZED TO ISSUE A SINGLE CLASS OF "COMMON STOCK" WITH ALL RELATIVE RIGHTS AND RESTRICTIONS, AS CONTAINED IN THE BYLAWS OF THE CORPORATION, BEING EQUAL. THE TOTAL NUMBER OF SHARES THAT THE CORPORATION HAS AUTHORITY TO ISSUE IS ONE HUNDRED THOUSAND (100,000) SHARES WITH EACH SHARE HAVING A PAR VALUE OF ONE CENT ($.01). SAID SHARES SHALL BE FULLY PAID AND NON-ASSESSABLE UPON RECEIPT BY THE CORPORATION OF APPOSITE CONSIDERATION.

1

*FOURTH:* THE ADDRESS OF THE REGISTERED OFFICE OF THE CORPORATION IS 204 WEST SPEAR STREET #3692, CARSON CITY, NEVADA 89703. THE COMMERCIAL REGISTERED AGENT OF THE CORPORATION IS TO BE *CORPORATE SERVICES OF NEVADA*, LOCATED AT 502 NORTH DIVISION STREET, CARSON CITY, NEVADA 89703.

*FIFTH:* THE MEMBERS OF THE GOVERNING BOARD OF THIS CORPORATION SHALL BE STYLED, AS DIRECTORS OVER THE AGE OF EIGHTEEN (18) AND THEIR NUMBER SHALL BE NOT LESS THAN ONE. THE NUMBER OF DIRECTORS OF THE CORPORATION MAY BE FIXED FROM TIME TO TIME IN ACCORDANCE WITH THE BY-LAWS OF THE CORPORATION. THE INITIAL DIRECTOR OF THIS CORPORATION SHALL BE ONE, AND THE NAME AND ADDRESS OF THE INITIAL DIRECTOR IS:

CRAIG S. ETCHEGOYEN
C/O 204 WEST SPEAR STREET #3692
CARSON CITY, NV. 89703

*SIXTH:* THE NAME AND ADDRESS OF THE INCORPORATOR IS AS FOLLOWS:

DON HARMER
502 NORTH DIVISION ST.
CARSON CITY, NV. 89703

*SEVENTH:* THE PERIOD OF EXISTENCE OF THIS CORPORATION SHALL BE PERPETUAL.

*EIGHTH:* NO DIRECTOR, OFFICER OR SHAREHOLDER OF THIS CORPORATION SHALL HAVE PERSONAL LIABILITY FOR DAMAGES FOR BREACH OF ANY FIDUCIARY DUTY AS A DIRECTOR OR OFFICER TO THE CORPORATION, ITS SHAREHOLDERS OR ANY OTHER PERSON EXCEPT FOR:

(A)   ACTS OR OMISSIONS WHICH INVOLVE INTENTIONAL MISCONDUCT, FRAUD OR A KNOWING VIOLATION OF LAW;

OR

(B)   THE PAYMENT OF DIVIDENDS IN VIOLATION OF NRS 78.300

2

S0100

ANY AMENDMENT, MODIFICATION OR REPEAL OF THE FOREGOING SHALL NOT ADVERSELY AFFECT ANY RIGHT OR PROTECTION OF A DIRECTOR OF THE CORPORATION HEREUNDER IN RESPECT OF ANY ACT OR OMISSION OCCURRING PRIOR TO THE TIME OF SUCH AMENDMENT, MODIFICATION OR REPEAL.

*NINETH:* THE CORPORATION MAY AMEND THESE ARTICLES OF INCORPORATION AT ANY TIME TO ADD OR CHANGE A PROVISION THAT IS REQUIRED OR PERMITTED TO BE IN THE ARTICLES OF INCORPORATION OR TO DELETE A PROVISION NOT REQUIRED TO BE IN THE ARTICLES OF INCORPORATION. WHETHER A PROVISION IS REQUIRED OR PERMITTED TO BE IN THE ARTICLES OF INCORPORATION IS DETERMINED AS OF THE EFFECTIVE DATE OF THE AMENDMENT.

THE UNDERSIGNED, FOR THE PURPOSE OF FORMING A CORPORATION UNDER THE LAWS OF THE STATE OF NEVADA, DO MAKE, FILE AND RECORD THIS CERTIFICATE, AND DO CERTIFY THAT THE FACTS HEREIN STATED ARE TRUE AND I HAVE ACCORDINGLY HEREUNTO SET MY HAND AND SEAL THIS DAY, MONDAY, MAY 01, 2017.

_____
DON HARMER

STATE OF NEVADA   }
                 : SS.
CARSON CITY      }

ON THIS 1ST DAY OF MAY 2017 PERSONALLY APPEARED BEFORE ME C. M. BLACKWOOD, A NOTARY PUBLIC, DON HARMER, WHO ACKNOWLEDGED THAT HE EXECUTED THE ABOVE INSTRUMENT.



C.M. Blackwood
NOTARY PUBLIC
STATE OF NEVADA
APPT No. 13-11700-3
MY APPT EXPIRES SEPTEMBER 17, 2017

_C M Blackwood_
NOTARY PUBLIC

3

# Exhibit 8

# Orange Holdings Initial List of Officers & Directors

# Exhibit 8

S0102

**(PROFIT) INITIAL/ANNUAL LIST OF OFFICERS, DIRECTORS AND STATE BUSINESS LICENSE APPLICATION OF:**

ENTITY NUMBER

| ORANGE HOLDINGS | E0208572017-0 |
| --- | --- |

NAME OF CORPORATION

FOR THE FILING PERIOD OF **MAY, 2017** TO **MAY, 2018**

*100103*

USE BLACK INK ONLY - DO NOT HIGHLIGHT

**\*\*YOU MAY FILE THIS FORM ONLINE AT www.nvsilverflume.gov\*\***

☐ Return one file stamped copy. (If filing not accompanied by order instructions, file stamped copy will be sent to registered agent.)

*IMPORTANT: Read instructions before completing and returning this form.*

1. Print or type names and addresses, either residence or business, for all officers and directors. A President, Secretary, Treasurer, or equivalent of and all Directors must be named. There must be at least one director. An **Officer** must sign the form. *FORM WILL BE RETURNED IF UNSIGNED.*

2. If there are additional officers, attach a list of them to this form.

3. Return the completed form with the filing fee. Annual list fee is based upon the current total authorized stock as explained in the Annual List Fee Schedule For Profit Corporations. A $75.00 penalty must be added for failure to file this form by the deadline. An annual list received more than 90 days before its due date shall be deemed an amended list for the previous year.

4. State business license fee is $500.00/$200.00 for Professional Corporations filed pursuant to NRS Chapter 89. Effective 2/1/2010, $100.00 must be added for failure to file form by deadline.

5. Make your check payable to the Secretary of State.

6. **Ordering Copies:** If requested above, one file stamped copy will be returned at no additional charge. To receive a certified copy, enclose an additional $30.00 per certification. A **copy fee of $2.00 per page** is required for **each additional copy** generated when ordering 2 or more file stamped or certified copies. Appropriate instructions must accompany your order.

7. Return the completed form to: Secretary of State, 202 North Carson Street, Carson City, Nevada 89701-4201, (775) 684-5708.

8. Form must be in the possession of the Secretary of State on or before the last day of the month in which it is due. (Postmark date is not accepted as receipt date.) Forms received after due date will be returned for additional fees and penalties. Failure to include annual list and business license fees will result in rejection of filing.

| Filed in the Office of | Business Number **E0208572017-0** |
| --- | --- |
| *Barbara K. Cegavske* | Filing Number **20170100319-23** |
| Secretary of State State Of Nevada | Filed On **05/01/2017** |
| | Number of Pages **1** |

(This document was filed electronically.)
**ABOVE SPACE IS FOR OFFICE USE ONLY**

**CHECK ONLY IF APPLICABLE AND ENTER EXEMPTION CODE IN BOX BELOW**

☐ Pursuant to NRS Chapter 76, this entity is exempt from the business license fee. Exemption code: ▢

**NOTE: If claiming an exemption, a notarized Declaration of Eligibility form must be attached. Failure to attach the Declaration of Eligibility form will result in rejection, which could result in late fees.**

☐ This corporation is a publicly traded corporation. The Central Index Key number is:

☐ This publicly traded corporation is not required to have a Central Index Key number.

NRS 76.020 Exemption Codes
001 - Governmental Entity
005 - Motion Picture Company
006 - NRS 680B.020 Insurance Co.

| NAME | TITLE(S) |
| --- | --- |
| CRAIG S ETCHEGOYEN | PRESIDENT (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

| NAME | TITLE(S) |
| --- | --- |
| CRAIG S ETCHEGOYEN | SECRETARY (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

| NAME | TITLE(S) |
| --- | --- |
| CRAIG S ETCHEGOYEN | TREASURER (OR EQUIVALENT OF) |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

| NAME | TITLE(S) |
| --- | --- |
| CRAIG S ETCHEGOYEN | DIRECTOR |

| ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| C.O. 204 WEST SPEAR STREET #3692 | CARSON CITY | NV | 89703 |

None of the officers or directors identified in the list of officers has been identified with the fraudulent intent of concealing the identity of any person or persons exercising the power or authority of an officer or director in furtherance of any unlawful conduct.

I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.

| X DON HARMER | Title INCORPORATOR | Date 5/1/2017 12:24:15 PM |
| --- | --- | --- |

**Signature of Officer or Other Authorized Signature**

Nevada Secretary of State List Profit
Revised: 7-1-15

S0103

# Exhibit 9

# Orange Holdings
# Annual List 2019

# Exhibit 9

S0104

## FILING HISTORY

### ENTITY INFORMATION

**Entity Name:**

ORANGE HOLDINGS

**Entity Number:**

E0208572017-0

**Entity Type:**

Domestic Corporation (78)

**Entity Status:**

Active

**Formation Date:**

05/01/2017

**NV Business ID:**

NV20171281021

**Termination Date:**

Perpetual

**Annual Report Due Date:**

5/31/2023

### FILING HISTORY DETAILS

| File Date | Effective Date | Filing Number | Document Type | Amendment Type | Source | View |
|-----------|----------------|---------------|---------------|----------------|--------|------|
| 06/21/2022 | 06/21/2022 | 20222411112 | Certificate of Reinstatement | | External | 📷 |
| 06/01/2020 | 06/01/2020 | 20200698463 | Annual List | | External | 📷 |

S0105

SilverFlume Nevada's Business Portal to start/manage your business

| File Date | Effective Date | Filing Number | Document Type | Amendment Type | Source | View |
|---|---|---|---|---|---|---|
| 05/29/2019 | 05/29/2019 | 20190230729-85 | Annual List | | External | ⊙ |
| 05/09/2019 | 05/09/2019 | 20190204112-82 | Annual List | | External | ⊙ |
| 05/01/2017 | 05/01/2017 | 20170190319-23 | Initial List | | External | ⊙ |
| 05/01/2017 | 05/01/2017 | 20170190318-12 | Articles of Incorporation | | External | ⊙ |

**Page 1 of 1, records 1 to 6 of 6**

### FILING DATE SNAPSHOT AS OF: 06/01/2020

| Business Details | Name Changes | Principal Office | Registered Agent |
|---|---|---|---|

| Officer Information | Shares |
|---|---|

| Date | Title | Name | Attention | Address1/Address2/City/State/Zip/Country |
|---|---|---|---|---|
| 05/29/2019 | President | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |
| 05/29/2019 | Secretary | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |
| 05/29/2019 | Treasurer | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |
| 05/29/2019 | Director | CRAIG S ETCHEGOYEN | | C.O. 204 WEST SPEAR STREET #3692, CARSON CITY, NV, 89703, USA |

**Page 1 of 1, records 1 to 4 of 4**

Back      Return to Search      Return to Results

S0106

# Exhibit 10

# Orange Holdings Annual List 2020

# Exhibit 10

SilverFlume Nevada's Business Portal to start/manage your business

## ENTITY INFORMATION

### ENTITY INFORMATION

**Entity Name:**

ORANGE HOLDINGS

**Entity Number:**

E0208572017-0

**Entity Type:**

Domestic Corporation (78)

**Entity Status:**

Active

**Formation Date:**

05/01/2017

**NV Business ID:**

NV20171281021

**Termination Date:**

Perpetual

**Annual Report Due Date:**

5/31/2023

### REGISTERED AGENT INFORMATION

**Name of Individual or Legal Entity:**

CORPORATE SERVICES OF NEVADA

**Status:**

Active

S0108

SilverFlume Nevada's Business Portal to start/manage your business

**CRA Agent Entity Type:**

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

NEVADA

**Street Address:**

502 NORTH DIVISION STREET, CARSON CITY, NV, 89703, USA

**Mailing Address:**

**Individual with Authority to Act:**

DON HARMER

**Fictitious Website or Domain Name:**

**OFFICER INFORMATION**

☐ **VIEW HISTORICAL DATA**

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| President | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |
| Secretary | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |
| Treasurer | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |
| Director | CRAIG S ETCHEGOYEN | c/o 204 WEST SPEAR STREET, #3692, Carson City, NV, 89703, USA | 06/01/2020 | Active |

**Page 1 of 1, records 1 to 4 of 4**

**CURRENT SHARES**

S0109

12/6/22, 1:04 PM                           SilverFlume Nevada's Business Portal to start/manage your business

| Class/Series | Type | Share Number | Value |
|---|---|---|---|
| | Authorized | 100,000 | 0.010000000000 |

**Page 1 of 1, records 1 to 1 of 1**

Number of No Par Value Shares:

**0**

Total Authorized Capital:

**1,000**

Filing History      Name History      Mergers/Conversions

Return to Search      Return to Results

S0110

# Exhibit 11

# Orange Holdings Certificate of Reinstatement-Revival

# Exhibit 11



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
**www.nvsilverflume.gov**

| Filed in the Office of | Business Number |
|---|---|
| *Barbara K. Cegavske* | E0208572017-0 |
| | Filing Number |
| | 20222411112 |
| Secretary of State | Filed On |
| State Of Nevada | 06/21/2022 11:10:40 AM |
| | Number of Pages |
| | 4 |

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89
☑ Reinstatement  ☐ Revival

| | |
|---|---|
| **1. Entity information:** | Name of entity as on file with the Nevada Secretary of State:<br><br>**ORANGE HOLDINGS**<br><br>Entity or Nevada Business Identification Number (NVID):  **NV20171281021** |
| **2. Registered Agent for Service of Process:** (check only one box)<br><br>**2a. Certificate of Acceptance of Appointment of Registered Agent:**<br>(Include "Registered Agent Acceptance/Statement of Change" form if needed for signature) | ☑ Commercial Registered Agent (name only below)  ☐ Noncommercial Registered Agent (name and address below)  ☐ Office or position with Entity (title and address below)<br><br>**CORPORATE SERVICES OF NEVADA**<br>Name of Registered Agent  **OR** Title of Office or Position with Entity<br><br>**502 NORTH DIVISION STREET**  **Carson City**  Nevada **89703**<br>Street Address  City  Zip Code<br><br>  Nevada<br>Mailing Address (If different from street address)  City  Zip Code<br><br>*I hereby accept appointment as Registered Agent for the above named Entity. If the registered agent is unable to sign the Articles of Incorporation, submit a separate signed Registered Agent Acceptance form.*<br><br>X _____<br>Authorized Signature of Registered Agent or On Behalf of Registered Agent Entity  Date |
| **3. Date When Revival is to Commence:** | Date when revival of charter is to commence or be effective, which may be before the date of the certificate: |
| **4. Duration of Revival:**<br>(A date is required for entities under NRS 88) | Indicate whether or not the revival is to be perpetual, and, if not perpetual, the time for which the revival is to continue. Limited Partnership under NRS 88 must indicate a date.<br>The corporation's existence shall be: PERPETUAL or |
| **5.Current List :**<br><br>Reinstatements:<br>List of Officers, Managers, Managing Members, General Partners, Managing Partners,Trustee or Subscribers<br><br>Revivals:<br>List of Officers, Managers, Managing Members, General Partners, Managing Partners or Trustee | **CORPORATION, INDICATE THE <u>PRESIDENT</u>, OR EQUIVALENT OF:**  Title: **PRESIDENT**<br><br>**CRAIG S ETCHEGOYEN**  **USA**<br>Name  Country<br><br>**c/o 204 WEST SPEAR STREET #3692**  **Carson City**  **NV**  **89703**<br>Address  City  State  Zip/Postal Code<br><br>**CORPORATION, INDICATE THE <u>TREASURER</u>, OR EQUIVALENT OF:**  Title: **TREASURER**<br><br>**CRAIG S ETCHEGOYEN**  **USA**<br>Name  Country<br><br>**c/o 204 WEST SPEAR STREET #3692**  **Carson City**  **NV**  **89703**<br>Address  City  State  Zip/Postal Code<br><br>**CORPORATION, INDICATE THE <u>DIRECTOR</u>, OR EQUIVALENT OF:**  Title: **DIRECTOR**<br><br>**CRAIG S ETCHEGOYEN**  **USA**<br>Name  Country<br><br>**c/o 204 WEST SPEAR STREET #3692**  **Carson City**  **NV**  **89703**<br>Address  City  State  Zip/Postal Code |

*This form must be accompanied by appropriate fees.*



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
**www.nvsilverflume.gov**

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89

☑ Reinstatement            ☐ Revival

CORPORATION, INDICATE THE <u>SECRETARY,</u> OR EQUIVALENT OF:     Title: **SECRETARY**

**CRAIG S ETCHEGOYEN**                    **USA**

Name                                      Country

**c/o 204 WEST SPEAR STREET #3692**   | **Carson City**   | **NV** | **89703**

Address                                   City              State   Zip/Postal Code

*This form must be accompanied by appropriate fees.*

Revised: 1/1/2019
S0113



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
           **www.nvsilverflume.gov**

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89

☑ Reinstatement          ☐ Revival

| | |
|---|---|
| **6. Statement of Fact:**<br>(Revivals only, select one. Entities under NRS 84 cannot revive) | ☐  Revival pursuant to 78.730 or 81.010: (check one)<br><br>The undersigned declare that the corporation desires to revive its corporate charter and is, or has been, organized and carrying on the business authorized by its existing or original charter and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapters 78 and/or 81.<br><br>☐  The undersigned declare that they have obtained written consent of the stockholders of the corporation holding at least a majority of the voting power and that this consent was secured; furthermore, that they are the person(s) designated or appointed by the stockholders of the corporation to revive the corporation.<br><br>☐  The undersigned declare that they are the person(s) who have been designated by a majority of the directors in office to sign this certificate and that no stock has been issued. Membership approval not required under NRS 81.010(2). |
| | ☐  Revival pursuant to 80:<br><br>The undersigned declare that the corporation desires to revive its qualification to do business and is, or has been, organized and carrying on the business authorized by its existing or original qualification and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 80.<br><br>☐  The undersigned declare that they have obtained written consent of the stockholders of the corporation holding at least a majority of the voting power and that this consent was secured; furthermore, that they are the person(s) designated or appointed by the stockholders of the corporation to revive the qualification.<br><br>☐  The undersigned declare that they are the person(s) who have been designated by a majority of the directors in office to sign this certificate and that no stock has been issued. |
| | ☐  Revival pursuant to 82:<br><br>The undersigned declare that the corporation desires to revive its corporate charter and is, or has been, organized and carrying on the business authorized by its existing or original charter and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapters 81 and 82.<br><br>This certificate must be executed by the President or Vice President **AND** Secretary or Assistant Secretary.<br><br>The undersigned declare that the execution and filing of this certificate has been approved unanimously by the last-appointed surviving directors of the corporation and the unanimous consent has been secured: |



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**
          **www.nvsilverflume.gov**

---

# Certificate of Reinstatement/Revival
## NRS 78, 78A, 80, 81, 82, 84, 86, 87, 87A, 88, 88A and 89

☑ Reinstatement                    ☐ Revival

---

| | |
|---|---|
| **6. Statement of Fact:**<br>(Revivals only, select one. Entities under NRS 84 cannot revive) | ☐  **Revival pursuant to 86.580:**<br>The undersigned declare that the limited-liability company desires to revive its charter and is, or has been,<br>organized and carrying on the business authorized by its existing or original charter and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 86.<br><br>The undersigned declares that he has been designated or appointed by the members to sign this certificate. Furthermore, the execution and filing of this certificate has been approved and secured by the written consent of a majority of the members. |
| | ☐  **Revival pursuant to 86:**<br>The undersigned declare that the foreign limited-liability company desires to revive its registration and is, or has been, organized and carrying on the business authorized by its existing or original registration and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of NRS 86.5467.<br><br>The undersigned declares that he/she has obtained approval by written consent of the majority in interest and that this consent was secured. |
| | ☐  **Revival pursuant to 87, 87A, 88 or 88A:**<br>The undersigned declare that the limited partnership, limited-liability partnership, limited-liability limited partnership or business trust desires to revive its certificate and is, or has been, organized and carrying on the business authorized by its existing or original certificate and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 87, 87A, 88 or 88A<br><br>The undersigned declares that he/she has been designated or appointed by the general partners, managing partners or trustees to sign this certificate. Furthermore, the execution and filing of this certificate has been approved and secured by the written consent of the general partners or managing partners holding at least a majority of the voting powers. |
| | ☐  **Revival pursuant to 89:**<br>The undersigned declare that the professional association desires to revive its articles of association and is, or has been, organized and carrying on the business authorized by its existing or original articles of association and amendments thereto, and desires to continue through revival its existence pursuant to and subject to the provisions of Chapter 89.<br><br>The undersigned declares that he/she has been designated or appointed by the members to sign this certificate. Furthermore, the execution and filing of this certificate has been approved and secured by the written consent of the holders of a membership interest in the professional association holding at least a majority of voting power. |
| **7. Signatures:**<br>(Required) | **I declare under the penalty of perjury that the reinstatement/revival has been authorized by a court of competent jurisdiction or by the duly selected manager or managers of the entity or if the entity has no managers, its managing members.**<br><br>**I declare, to the best of my knowledge under penalty of perjury, that the information contained herein is correct and acknowledge that pursuant to NRS 239.330, it is a category C felony to knowingly offer any false or forged instrument for filing in the Office of the Secretary of State.**<br><br>**X  DON HARMER**<br>Signature of Officer, Manager, Managing Member,<br>General Partner, Managing Partner, Trustee, or<br>Authorized Signer<br><br>*FORM WILL BE RETURNED IF UNSIGNED.* |

Authorized Signer | 06/21/2022
Title | Date

---

*This form must be accompanied by appropriate fees.*

# Exhibit 12

# WSOU Investments
# Operating Agreement

# Exhibit 12

S0116

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0118

*Filed Under Seal*

*Filed Under Seal*

S0119

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0122

*Filed Under Seal*

*Filed Under Seal*

S0123

*Filed Under Seal*

*Filed Under Seal*

S0124

*Filed Under Seal*

*Filed Under Seal*

S0125

*Filed Under Seal*

*Filed Under Seal*

S0126

*Filed Under Seal*

*Filed Under Seal*

S0127

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0130

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0133

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0135

# Exhibit 13

# WSOU Investments A&R Operating Agreement

# Exhibit 13

S0136

*Filed Under Seal*

*Filed Under Seal*

S0137

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0139

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0141

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0143

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0147

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

# Exhibit 14

# WSOU Investments Second A&R Operating Agreement

# Exhibit 14

*Filed Under Seal*

*Filed Under Seal*

S0157

*Filed Under Seal*

*Filed Under Seal*

S0158

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0162

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0164

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0166

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0168

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0171

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0173

*Filed Under Seal*

*Filed Under Seal*

S0174

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0177

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0179

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0183

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0186

*Filed Under Seal*

*Filed Under Seal*

S0187

*Filed Under Seal*

*Filed Under Seal*

S0188

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0191

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0193

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0195

*Filed Under Seal*

*Filed Under Seal*

S0196

*Filed Under Seal*

*Filed Under Seal*

S0197

*Filed Under Seal*

*Filed Under Seal*

S0198

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0200

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0206

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0213

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0222

*Filed Under Seal*

*Filed Under Seal*

S0223

*Filed Under Seal*

*Filed Under Seal*

S0224

*Filed Under Seal*

*Filed Under Seal*

S0225

*Filed Under Seal*

*Filed Under Seal*

S0226

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

*Filed Under Seal*

S0230