**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| WSOU INVESTMENTS, LLC, <br><br> Plaintiff <br><br> v. <br><br> SALESFORCE, INC., <br><br> Defendant | Case No.: 3:23-cv-00023-RCJ-CSD <br><br> **Order** <br><br> Re: ECF No. 63, 64, 69, 71 |

Before the court is Salesforce, Inc.'s (Salesforce) motion for contempt against Orange Holdings (Orange) for failure to comply with this court's March 2, 2023, and April 10, 2023, orders. (ECF Nos. 63, 63-1 to 63-4 (redacted), ECF Nos. 64, 64-1 to 64-9 (sealed).) Orange filed a response. (ECF Nos. 68, 70 (sealed).) Salesforce filed a reply. (ECF Nos. 76, 78 (sealed).)

Also before the court is non-party Orange's renewed motion to transfer venue and/or motion for reconsideration of denial to transfer venue. (ECF Nos. 69 (redacted) 71 (sealed).) Salesforce filed a response. (ECF Nos. 83 (redacted), 85 (sealed).) Orange filed a reply. (ECF Nos. 86 (redacted), 87 (sealed).)

For the reasons set forth below, Orange's renewed motion to transfer and/or motion for reconsideration of the denial of transfer to the Western District of Texas is denied, and Salesforce's motion for contempt is granted in part and denied in part.

**I. BACKGROUND**

WSOU Investments, LLC, is a patent holding company with 10 pending patent-infringement lawsuits against Salesforce in the Western District of Texas (W.D. Tex. Litigation). In the W.D. Tex. Litigation, Salesforce served a subpoena on Orange, a Nevada corporation.

(ECF No. 5-1.) Salesforce seeks information and documents from Orange related to its license defense in the W.D. Tex. Litigation. Salesforce issued similar subpoenas to other entities affiliated with WSOU Investments: WSOU Holdings, LLC (WSOU Holdings) (ECF No. 15-1); OCO Capital Partners LP (OCO) (ECF No. 15-2); and WSOU Capital Partners LLC (WSOU Capital) (ECF No. 15-3).

Salesforce's license defense arises from a settlement and license agreement that Salesforce entered into with Uniloc, another patent holding company founded by Craig Etchegoyen, the same individual that Salesforce asserts founded WSOU Investments, and whom they claim controls Orange. Pursuant to the settlement with Uniloc, Salesforce asserts it is entitled to a license for any past, present or future Uniloc patent. Salesforce contends that the agreement included Etchegoyen, as well as other affiliates, as part of Uniloc. Salesforce seeks to show that Etchegoyen is in control of WSOU Investments, and therefore, under the agreement with Uniloc, has the ability to license the WSOU Investments patents at issue in the W.D. Tex. Litigation. Salesforce claims that Orange is controlled by Etchegoyen, and Orange has an interest in WSOU Investments. As such, Salesforce seeks information in discovery to understand the ownership structure and actions of Orange and the relationship between Orange and Etchegoyen and between Orange/Etchegoyen and WSOU Investments to ultimately show that WSOU Investments is controlled by Orange/Etchegoyen. (*See* ECF No. 39-1 at 7-16.)

Salesforce sought to compel WSOU and Orange to produce this information in response to the subpoena in the W.D. Tex. Litigation. Magistrate Judge Gilliland held a hearing on December 21, 2022. (ECF No. 3-1; ECF No. 39-1.) Judge Gilliland separated the documents sought into two categories: organizational-operational agreements and funding-related agreements. (ECF No. 39-1 at 22:14-17.) WSOU Investments' counsel said it had asked

Mr. Etchegoyen if he had the organizational-operational agreements and documents for Orange. (*Id*. at 22:23-25, 23:1-18.)

Judge Gilliland acknowledged that the release in the settlement with Uniloc was "extremely broad," which in his view, got Salesforce "to the point where they're entitled to explore whether [Etchegoyen] falls within that definition for purposes of the plaintiff in this case." (*Id*. at 26:4-13.) Judge Gilliland granted Salesforce's request regarding operating agreements and required WSOU Investments to produce the Orange, WSOU Holdings, and WSOU Capital operating agreements and corporate structure governance agreements it had and could produce. (*Id*. at 34:20-25, 35:1.) With respect to the funding-related documents, Judge Gilliland said: "I understand the key-person argument, but that's – I don't think that's somewhere we want to go just yet, so I'm going to deny the request for the funding and loan agreements." (*Id*. at 35:9-12.)[1] He did not think the "need for [the loan agreements was] high enough to order" their production at that time. (*Id*. at 35:13-17.)

Judge Gilliland then addressed Salesforce's subpoenas to third parties. He said: "since you've got subpoenas to a third party, that seems more appropriate for a motion to compel wherever that needs to be appropriately filed. But that way we can get the third party before whatever court the party needs to be before." (*Id*. at 46:13-19.)

Orange did not participate in the December 2022 hearing before Magistrate Judge Gilliland in the W.D. Tex. Litigation, although it was given notice of the hearing. It is Orange's

---

[1] Salesforce was seeking funding agreements, which it believes will show WSOU Investments went to get private funding so it could engage in litigation, including against Salesforce. Salesforce contends that there is a "key man" provision in the agreements that says that Craig Etchegoyen has to be personally involved in the litigation in order for them to lend the money. They assert this will show Etchegoyen's control over WSOU Investments, Orange and the related entities.

3

position that it did not have ample notice of the hearing for counsel to be able to attend, and Orange was not fully apprised of the basis for the motion, *i.e.,* Salesforce's license defense[2]; and therefore, it was not prepared to participate in that hearing. (*See* ECF No. 15-8 at 6-7.) At the time, Orange took the position that under Rule 45, the motions had to be filed in the district where compliance is required (in Nevada for Orange). In Orange's counsel's correspondence to Salesforce's counsel, Orange stated that "Salesforce [had] not asked for, and none of the Non-Parties have provided, consent to a Rule 45(f) transfer." In any event, Orange asserted that the decision whether to transfer the issue to W.D. Tex. had to be made by the judge where compliance is required. (*Id*. at 7.)

When it became apprised Salesforce would be filing the motion to compel in the District of Nevada, Orange's counsel informed Salesforce's counsel that it would review the motion and then could discuss whether it would make sense to transfer the motions back to the W.D. Tex. (*Id*. at 8.) After reviewing the motion to compel, Orange's counsel advised Salesforce that Orange intended to seek transfer of the motion to compel to W.D. Tex. (*Id*.)

Salesforce filed its motion to compel against Orange in this district on January 13, 2023. (ECF Nos. 1, 3, 3-1.) It filed motions to compel against WSOU Capital and WSOU Holdings in the District of Delaware (ECF No. 15-4) and against OCO in the District of Columbia. (ECF No. 15-5.)

Orange filed a response to the motion to compel in this district (ECF Nos. 12, 13.13-1 to 13-9, 14, 15, 15-1 to 15-9), as well as a motion to change venue or transfer this matter to W.D. Tex. under Rule 45(f). (ECF Nos. 17, 17-1, 18, 18-1 to 18-9, 19, 19-1, 20, 20-1 to 20-9).

---

[2] As it turns out, if Orange had attended the December 2022 W.D. Tex. hearing, Salesforce put on an entire slideshow presentation explaining its license defense.

4

Salesforce filed a reply in support of its motion to compel (ECF Nos. 22, 22-1 to 22-8, 24, 24-1 to 24-8) and response to the motion to change venue or transfer to W.D. Tex (ECF Nos. 25, 25-1 to 25-5). Orange filed a reply in support of its motion. (ECF Nos. 36, 37, 37-1 to 37-3, 38, 38-1, 39, 39-1 to 39-3.)

The court had a hearing on the motions on March 2, 2023. (ECF Nos. 41, 49 (transcript).)

Orange argued at the hearing that the issue of the relevance of the license defense was already being considered by Judge Albright in W.D. Tex., and therefore, it did not make sense to have four different courts (W.D. Tex., D. Del, D.C., D. Nev.) deciding this issue.

The court specifically considered at the hearing the possibility of inconsistent decisions in the different districts where Salesforce's motions to compel were pending. The court denied Orange's motion to transfer the motion W. D. Tex., and granted the motion to compel in part. The motion to compel was granted with respect to requests 1-12 of the subpoena, and the court ordered the parties to meet and confer to attempt to narrow the scope of requests 13-25.

Orange did not file an objection to the court's order.

The parties filed a joint status report regarding their meet and confer efforts (ECF No. 52), and the court ordered the parties to further meet and confer in person at the courthouse on the remaining disputed requests for production and deposition topics. (ECF No. 58.)

The parties met and conferred in person on April 10, 2023, and the court held a hearing. (ECF Nos. 61, 62.) The court was advised at that time that the District of Delaware transferred its motion to compel against WSOU Holdings and WSOU Capital to W.D. Tex. Orange's counsel represented that he sent correspondence to counsel for WSOU Holdings and WSOU Capital Partners with the subpoena directed to Orange, and their counsel provided the governance documents for those entities.

The court ordered Orange to produce the following:

Request 13: agreements between Orange and WSOU Investments, OCO, or BP Funding Trust signed by Craig Etchegoyen where they reference Craig Etchegoyen.

Request 14: agreements between Orange and Nokia or other WSOU defendants signed by Craig Etchegoyen or that reference Craig Etchegoyen.

Request 15: communications sent or received by Craig Etchegoyen between Orange and Nokia, WSOU Investments, OCO, or BP Funding Trust related to the asserted patents or these litigations.

Request 17: communications sent or received by Craig Etchegoyen between Orange and WSOU relating to the asserted patents litigation or Salesforce.

Request 18: communications sent or received by Craig Etchegoyen between Orange and any other entity relating to the asserted patents in litigation or Salesforce.

Request 22: all documents and communications relating to the ownership or control of Orange or WSOU by Craig Etchegoyen.

Request 24: all documents and communications relating to the control of these litigations by Orange.

The court also found that the funding agreements referenced above appear to be relevant. It advised the parties it was not limited by any discovery orders in W.D Tex. The court concluded it appears that Etchegoyen controls Orange, and that Orange may have control of the funding agreements, where control is defined as the legal right to obtain the documents. Orange's counsel specifically argued that Orange did not have control over the documents. He argued that Orange did not have agreements with Nokia, BP Funding, or OCO. The court clarified that it was using the definition of Orange that is in the subpoena, which defined Orange to include its

current and former officers and directors as well as affiliates and other entities that own or control or are owned or controlled by or share common ownership or control with them. (ECF No. 62 at 31-39.). Orange, once again, did not file an objection to the court's order.

On May 5, 2023, Salesforce filed a motion for contempt against Orange for its failure to comply with the court's March 2, 2023, and April 10, 2023, orders. (ECF No. 63.) Salesforce argues that Orange produced only a handful of documents and now contends it does not have possession, custody, or control of the majority of the documents responsive to the subpoena. Salesforce maintains that Orange and Etchegoyen are one and the same, and Orange has legal control over WSOU Investments as well as WSOU Capital Partners and WSOU Holdings; and therefore, they have possession, custody, and control of the documents held by these entities.

On May 22, 2023, Orange filed a renewed motion to transfer venue or motion for reconsideration of the denial of the transfer of venue. (ECF No. 71.)

The court held a hearing on the motions on June 12, 2023, and took the motions under submission. (ECF Nos. 89, 90 (transcript).)

## II. DISCUSSION

**A. Orange's Renewed Motion to Transfer to W.D. Tex**

Orange renews its motion to transfer the motion to compel or seeks reconsideration of the order denying transfer back to W.D. Tex.

Under Rule 60, the court may reconsider an order if the party seeking reconsideration demonstrates: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); … (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Orange argues that reconsideration is appropriate because the courts in the District of Columbia and the District of Delaware have now both transferred their motions to compel to W.D. Tex. In addition, Orange contends that the W.D. Tex. has already ruled on issues presented by Salesforce's motion, *i.e.*, the relevance and need for the funding agreements.

In denying Orange's motion to transfer, the court specifically considered that there was a possibility of inconsistent rulings, both in the District of Delaware and the District of Columbia, and in the event the motions in those districts were transferred to W.D. Tex. The court likewise considered Orange's argument that W.D. Tex. had addressed arguments similar to those being advanced by Salesforce in this district.

Importantly, the court has already made its rulings on the motion to compel. Orange did not timely object to those rulings. There is no need to transfer a motion to W.D. Tex, that has already been determined. What is before the court currently, is whether Orange has failed to comply with the courts orders, and if so, whether it should be held in contempt or otherwise sanctioned. It would not be in the interests of judicial economy to have another judge in another district determine whether Orange failed to comply with an order issued by this court.

For these reasons, Orange's renewed motion to transfer and/or motion for reconsideration of the order denying transfer to W.D. Tex. is denied.

**B. Salesforce's Contempt Motion**

Salesforce argues that in response to the court's orders requiring compliance with Salesforce's subpoena, Orange and Etchegoyen produced only a handful of documents and now contend they do not have possession, custody, or control of the majority of the documents responsive to the subpoena. Salesforce maintains that Orange and Etchegoyen are "one and the same," and Orange has legal control over WSOU Investments, WSOU Capital, and WSOU

Holdings. As such, Salesforce contends that Orange/Etchegoyen have possession, custody or control over all the documents held by these entities. It seeks an order finding Orange in contempt and also an order that Orange and Etchegoyen provide the responsive documents.

In the court's first order, Orange was required to produce documents responsive to requests 1-12 of the subpoena. This included all documents regarding: the formation and ownership of Orange (requests 1 and 2); Etchegoyen's ownership interest in Orange (request 3); the relationship between Orange and WSOU Investments including its membership in WSOU Investments per the WSOU Operating Agreement effective August 21, 2017 (request 4); the relationship between Orange and OCO (request 5); Orange making an initial capital commitment of $5,100 into WSOU Investments (request 6); Orange having a 51% membership interest in WSOU Investments (request 7); Etchegoyen being the president of Orange (request 8); Orange receiving an annual, consulting fee from WSOU to compensate Etchegoyen or any other arrangement to give money to Orange to compensate Etchegoyen (request 9); the formation of AI Technology Partners LLC and Orange's membership in it (request 10); Orange's corporate structure (request 11); and who controls Orange (request 12).

Salesforce states that in response to the court's initial order, Orange produced eight documents, for a total of 47 pages, in response to requests 1-12: (i) undated Orange bylaws; (ii) an IRS notice assigning an employer identification number to Orange; (iii) the Orange corporate charter dated May 1, 2017; (iv) Orange articles of incorporation; (v) duplicate copies of a waiver of notice and consent to action in lieu of organization meeting by Orange shareholders; (vi) duplicate copies of Orange's shareholder meeting minutes from May 2018-2021; (vii) an Orange share certificate; and (viii) Orange shareholder ledger. No other emails,

communications, or other documents, such as emails from Etchegoyen concerning the operations and business of Orange and his control of Orange were produced.

After the court's April 10, 2023, order compelled Orange to provide responsive documents to narrowed requests 13-15, 17-18, 22 and 24, Orange produced additional documents and served supplemental responses. Orange produced 19 documents: (i) the operating agreements and amendments for WSOU Holdings and WSOU Capital; (ii) assignments of membership interests in WSOU Holdings and WSOU Capital; and (iii) agreements to redeem or acquire interests in WSOU Holdings and WSOU Capital. These documents had been previously produced by WSOU Holdings and WSOU Capital.

In addition, Orange supplemented many of its responses to state it did not have any non-privileged responsive documents within its possession, custody, or control. (ECF No. 64-6.) Some of the further responses state that to the extent any responsive documents have ever existed, they are maintained by WSOU Investments. (*See* ECF No. 64-7 at 12, 16, 18, 22, 24.)

Orange's position is that neither Orange nor Etchegoyen have control over WSOU Investments. Instead, Orange asserts that it holds only a minority interest in WSOU Investments, and Etchegoyen is only one of five votes on WSOU Investments' board of managers, and the board rejected Etchegoyen's request for responsive documents. (*See* ECF No. 64-7.) In addition, according to Etchegoyen, Orange never had its own email account. (Etchegoyen Decl., ECF No. 73 at 7 ¶ 3.) Orange's counsel indicated in hearings before this court, however, that Etchegoyen utilized his WSOU Investments email to communicate on behalf of Orange.

Etchegoyen states that on March 22, 2023, a reorganization occurred within WSOU Investments, which changed the management of WSOU Investments such that Etchegoyen now has only one vote out of five on WSOU Investments' board of managers. Jordan Mikes is chair

of the board of managers. (Etchegoyen Decl., ECF No. 73 at 8 ¶ 8.) After March 23, 2023, Etchegoyen stopped using his WSOU Investments email account and no longer had access to WSOU Investments files. (*Id*. ¶ 9.)

Jordan Mikes states that the change in WSOU Investments' management structure occurred as a result of an arm's length commercial agreement and has nothing to do with Salesforce's case or license defense. (Mikes Decl., ECF No. 73 at 25 ¶ 3.)

First, to the extent that Orange has not produced responsive documents in connection with the court's orders because Etchegoyen stopped using his WSOU Investments email account that he previously used to conduct business on behalf of Orange, the court finds that Orange has failed to comply with the court's order. Etchegoyen controls Orange. Etchegoyen used his WSOU Investments email account to conduct business on behalf of Orange. Etchegoyen says that he stopped using his WSOU Investments email account after March 23, 2023. Neither Etchegoyen nor Mr. Mikes state that Etchegoyen no longer has access to his WSOU Investments email account. In fact, he remains on WSOU Investments board of managers. The court perceives the failure to produce documents on the basis that Etchegoyen is no longer using his WSOU Investments email account as a clear example of gamesmanship. The court will require Orange, through Etchegoyen, whom has control over Orange, to search his WSOU Investments email account that he used to conduct business on Orange's behalf to determine if there are documents responsive to the requests that are the subject of the Court's order that were sent or received by or on behalf of Orange.

Second, the court will address Orange's assertion that to the extent any responsive documents have ever existed, they are maintained by WSOU Investments. This requires the court

to determine whether Orange has control over WSOU Investments, and therefore, the ability to require WSOU Investments produce any responsive documents.

"The party to whom a subpoena for records is issued must produce only those records which are in his 'possession, custody or control.'" *U.S. v. Int'l Union of Petro. and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (citation and quotation marks omitted).

The Ninth Circuit defines control in this context, as "the legal right to obtain documents upon demand" and not the "practical ability to obtain the requested documents." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) (internal quotation marks and citation omitted). "The party seeking production of the documents … bears the burden of proving that the opposing party has such control." *Int'l Union*, 870 F.2d at 1452 (citation omitted).

"A corporation must produce documents possessed by a subsidiary that the parent corporation *owns or wholly controls*." *Id*. (citations omitted, emphasis added).

Salesforce maintains that Orange and Etchegoyen have the legal right via vote or consent to require the production of documents by WSOU Investments because their operating agreements give majority members authority to make all company decisions.

Orange argues that it has only a minority interest in WSOU Investments, and Etchegoyen now is only one of five votes on WSOU Investments' board of managers.

Orange has not disputed that its only shareholder is the Etchegoyen 2012 Dynasty Trust (the Trust). The Trust appointed Etchegoyen as Orange's sole director, president, secretary, and treasurer. On the record before it, the court has no doubt that Etchegoyen controls Orange.

It is undisputed that Orange has an 86.78% interest WSOU Capital; WSOU Capital has a 66.24% interest in WSOU Holdings; and WSOU Holdings has a 64% interest in WSOU Investments. Thus, it is undisputed that Orange has a majority interest in both WSOU Capital

and WSOU Holdings. At issue is whether Orange has a majority interest in, and therefore, control over WSOU Investments.

It appears that through its interests in WSOU Capital and WSOU Holdings, *Orange* only has a minority interest in WSOU Investments. Orange calculates it as a 36.79% interest: 86.78% x 66.24% x 64%=36.78%.

Salesforce also asserts that Etchegoyen is the alter ego of Orange, and as such, must produce all responsive documents that he possesses. The court has made a finding that Etchegoyen is in control of Orange. The court has not made a finding that Etchegoyen is the alter-ego of Orange.

"Nevada has long recognized that although corporations are generally to be treated as separate legal entities, the equitable remedy of 'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000) (citation omitted). To establish alter-ego liability, it must be demonstrated that (1) the corporation is "influenced and governed by the person asserted to be the alter ego"; (2) there is a "unity of interest and ownership that one is inseparable from the other"; and (3) "adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice." *Id*. at 846-47 (citation omitted). Factors indicative of an alter-ego relationship include: "(1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Id*. at 847 (citation omitted).

To support its claim that Etchegoyen is the alter-ego of Orange, Salesforce points to the following facts: Etchegoyen is Orange's president, treasurer, secretary and the sole member of its

board of directors; Orange is owned by Etchegoyen's Trust; he is the only signatory on Orange's bank account; and Orange did not hold board and shareholder meetings in 2022. The court finds that these facts alone are insufficient to establish Etchegoyen is the alter-ego of Orange at this point.

Even if the court found Etchegoyen is the alter ego of *Orange*, Salesforce would still have to establish that he has control over WSOU Investments, which means he has the legal right to obtain the documents from WSOU Investments. The same is true with respect to Salesforce's argument that Orange could direct WSOU Holdings, in which it does hold a majority stake, to instruct WSOU Investments to produce the responsive documents: WSOU Holdings must have the legal right to obtain the documents.

That brings the court to WSOU Investments' March 2023 reorganization. While Etchegoyen may have had the ability to require WSOU Investments prior to late March 2023, with WSOU Investments' recent reorganization, he is only one out of five votes on the board of managers and according to Mr. Mikes, WSOU Investments is refusing to produce any responsive documents.

Despite Mr. Mike's statement to the contrary, the court finds the timing of WSOU Investments' reorganization to be suspicious. It occurred just weeks after this court entered its order granting a portion of Salesforce's motion to compel and requiring Salesforce and Orange to meet and confer to narrow document requests in the Orange subpoena that pertain to WSOU Investments. While there is minimal information in the record about the details of this reorganization, it strikes the court as gamesmanship on the part of Etchegoyen and WSOU Investments and potentially its new board of managers. Such gamesmanship is not tolerated in litigation and discovery in the District of Nevada. That being said, this court does not have

jurisdiction over Mr. Etchegoyen or WSOU Investments, and as such, it cannot hold them in contempt or impose sanctions.

Finally, to the extent Salesforce is arguing that WSOU Investments be required to produce document responsive to Orange's subpoena, the court is concerned this invades the province of the W.D. Tex. Litigation, where the parties have been litigating whether WSOU Investments is required to produce certain documents, including those related to funding and "key man" provisions. It seems more appropriate for Salesforce to renew its argument about the production of such documents from WSOU Investments in W.D. Tex., where it may apprise the presiding judges in the W.D. Tex. Litigation of WSOU Investments' recent reorganization, if it has not done so already.

In conclusion, Salesforce's motion for contempt is denied insofar as Salesforce asserts that Orange did not comply with this court's order when it asserted in its further responses that to the extent responsive documents existed, they are maintained by WSOU Investments.

**C. Contempt or Sanctions**

The court has made a finding that Orange failed to comply with its order to the extent it did not produce responsive documents on the basis that Etchegoyen was no longer using his WSOU Investments' email account that he had used this email account to conduct business on behalf of Orange.

The court declines to hold Orange in contempt under Rule 45. However, the court may impose any and all appropriate sanctions on an attorney or party who fails to comply with any order of the court. LR IA 11-8(e). The court finds an appropriate sanction is for Orange to pay Salesforce's reasonable attorney's fees incurred in filing the motion to compel. In addition, as noted above, Orange is required to conduct a search of the WSOU Investments email account

that was used by Etchegoyen to conduct business on behalf of Orange to determine if there are responsive documents sent to or received by Etchegoyen on behalf of Orange. If there are responsive emails or documents, Orange is ordered to produce them to Salesforce no later than 15 days from the date of this order.

Orange is cautioned that if it attempts to engage in further gamesmanship with respect to responsive emails and/or documents attached to emails sent or received by Orange by asserting that Orange does not have control over the email account, this court will not hesitate to transfer the issue of whether WSOU Investments is obstructing access to responsive documents to the W.D. Tex.

### III. CONCLUSION

Orange's renewed motion or motion for reconsideration regarding transfer of this matter to the Western District of Texas (ECF Nos. 69, 71) is **DENIED**.

Salesforce's motion (ECF Nos. 63, 64) is **GRANTED IN PART AND DENIED IN PART** as follows:

The motion is **GRANTED** insofar as Orange, through Etchegoyen, is required to conduct a search of Etchegoyen's WSOU Investments email account that he used to conduct business on behalf of Orange to determine if there are responsive documents sent to or received by Etchegoyen on behalf of Orange. If there are responsive emails or documents, Orange is ordered to produce them to Salesforce no later than 15 days from the date of this order.

In addition, Orange is required to pay Salesforce's reasonable attorney's fees incurred in filing the motion to compel. On or before **July 7, 2023**, Salesforce shall file a motion requesting the reasonable amount of fees incurred in filing its motion to compel. Orange has until **July 21, 2023**, to file a response. Salesforce has until **July 28, 2023**, to file a reply.

Salesforce's motion for contempt is **DENIED** insofar as Salesforce asserts that Orange did not comply with this court's order when it asserted in its further responses that to the extent responsive documents existed, they are maintained by WSOU Investments. Salesforce may seek to renew its argument about the production of such documents from WSOU Investments in W.D. Tex., where it may apprise the presiding judges in the W.D. Tex. Litigation of WSOU Investments' recent reorganization, if it has not done so already.

**IT IS SO ORDERED**.

Dated: June 23, 2023

_____
Craig S. Denney
United States Magistrate Judge