# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-cv-00023-RCJ-CSD |
| | ) | |
| SALESFORCE, INC., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This dispute[1] arises out of numerous Texas-based patent-infringement lawsuits between Plaintiff, WSOU Investments, LLC ("WSOU Investments"), and Defendant, Salesforce, Inc. ("Salesforce").[2]  In an effort to understand WSOU Investments' ownership structure, Salesforce subpoenaed several non-party companies in the Texas litigation that owned membership interests in WSOU Investments.  (Dkt. 100 at 2); (*see* Dkt. 93 at 3).  Among those non-party companies is Orange Holdings, Inc. ("Orange"), a Nevada corporation.  (Dkt. 1 at 2); (*see also* Dkt. 13-1); (Dkt. 13-2); (Dkt. 13-3).

---

[1]     Due to the nature of this case, which involves sensitive information, almost all relevant docket entries have been filed twice—once as a public, redacted version and once as an unredacted version filed under seal.  In the interests of consistency and clarity, and to preserve the Parties' privacy, docket entry citations in this Order will be to the unsealed, redacted versions filed in this case (unless the cited docket entry exists only as an unredacted, sealed entry).

[2]     In December 2020, WSOU Investments filed ten patent-infringement lawsuits against Salesforce in the Western District of Texas.  Those ten cases (the "Texas litigation") are captioned *WSOU Investments, LLC v. Salesforce, Inc.*, Case Nos. 6:20-cv-1163-ADA to 1172-ADA.  (*See* Dkt. 93 at 3); (Dkt. 100 at 2).

The pending motions, listed below, all flow from Salesforce's original motion to compel, filed in this Court in January 2023,[3] seeking to compel Orange's compliance with the subpoenas issued pursuant to the Texas litigation. (*See* Dkt. 1). In March, Magistrate Judge Craig S. Denney issued an Order (1) granting in part and denying in part Salesforce's motion to compel and (2) denying a motion filed by Orange requesting transfer to the Western District Texas pursuant to Rule 45(f).[4] (Dkt. 41); (Dkt. 43); (*see* Dkt. 17). Unfortunately, this did not end the Parties' discovery disputes, which ultimately led Salesforce to file a motion for contempt seeking sanctions against Orange in May. (Dkt. 63). Also in May, Orange renewed its previous motion to transfer, seeking reconsideration under Rule 60. (Dkt. 69).

In June, Judge Denney issued the written Order that is now before the Court (the "June Order") addressing both May motions. (Dkt. 91). The June Order, again, denied Orange's request to transfer this issue to Texas. (*Id.* at 7–8). As to contempt, Judge Denney "made a finding that Orange failed to comply" with his previous rulings to an extent,[5] but he expressly "decline[d] to hold Orange in contempt under Rule 45." (*Id.* at 15). Instead, he ordered Orange to comply with his previous rulings by conducting a specific search and producing any responsive documents

---

[3]     Salesforce filed similar motions to compel against WSOU Holdings and WSOU Capital Partners LLC in the District of Delaware, (*see* Dkt. 13-4); (Dkt. 93 at 6), and against OCO Capital Partners LP in the District of Columbia, (*see* Dkt. 13-5). Judges in both of those districts have since transferred the disputes to the Western District of Texas. (*See* Dkt. 69 at 4–5).
[4]     "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).
[5]     Below, in the Background section of this Order, the Court will discuss in detail Judge Denney's previous rulings and Orange's alleged compliance or non-compliance.

1    found in that search.  (*Id.* at 15–16).  As to sanctions, Judge Denney ordered Orange "to pay

2    Salesforce's reasonable attorney's fees incurred in filing the motion to compel."  (*Id.* at 15).

3        Neither Salesforce nor Orange were satisfied with Judge Denney's June Order, and both

4    have filed Objections, which are now pending before the Court.  (Dkt. 93); (Dkt. 100).  In addition,

5    Orange has also filed a motion asking the Court to stay the ordered search and production pending

6    this Court's resolution of the underlying discovery dispute.  (Dkt. 95).[6]  For the following reasons,

7    the Court overrules the objections raised by both Parties, (Dkt. 93); (Dkt. 100), and, thus, will not

8    set aside any part of the June Order, (Dkt. 91).  Having addressed the underlying discovery dispute,

9    the Court denies as moot Orange's motion to stay, (Dkt. 95).

10       Lastly, the Parties have also filed a number of motions requesting leave to file their

11   objections, motions, responses, and replies under seal.  (Dkt. 92); (Dkt. 101); (Dkt. 106); (Dkt.

12   110); (Dkt. 112).  As all of these motions have been filed unopposed and without response, the

13   Court will grant them without discussion.[7]

14   **I.    Background**

15       **A.    Factual Background**

16       In 2003, Craig Etchegoyen founded Uniloc, (Dkt. 5 at 39), a company that would later in

17   2016 enter into a confidential settlement agreement with Salesforce—an agreement whose terms

18   are at the heart of this case.  (Dkt. 1 at 4).  As a defense to WSOU Investments' allegations of

---

[6]    The Court notes that although the docket reflects that Orange filed two separate motions—a Motion to Stay, (Dkt. 95), and Objections to Judge Denney's June Order, (Dkt. 93)—the two docket entries are identical, and the motion is simply a duplicate of the objections.

[7]    Under this Court's Local Rules, failure to file a response in opposition to such a motion constitutes consent to the granting of the motion.  LR 7-2(d).

patent infringement in the Texas litigation, Salesforce argues that the settlement agreement entitles it to a license for any past, present, or future Uniloc patents.  (*Id.* at 2); (Dkt. 93 at 3).  According to Salesforce, the settlement agreement contains a release whose licensing agreement extends to Etchegoyen as well as Uniloc's affiliate, WSOU Investments.  (Dkt. 1 at 4–5).  The release has been characterized in the Texas litigation as "extremely broad[.]"  (Dkt. 37-1 at 26:2–4, 9–13).

In order to establish this affiliate relationship, Salesforce contends that WSOU Investments is controlled by Orange, (Dkt. 63 at 5), thus, as the President of Orange, (Dkt. 72 at 7), Etchegoyen controls WSOU Investments.  (Dkt. 63 at 5).  Salesforce supports its position with evidence that Orange owns of majority of WSOU Capital Partners, which in turn owns a majority of WSOU Holdings, which in turn owns a majority of WSOU Investments.  (Dkt. 100 at 3).  Orange rebuts this claim, arguing that as a fourth-generation entity, Orange only has a minority interest in WSOU Investments. (Dkt. 93 at 4); (Dkt. 107 at 8).  Moreover, Orange argues that this question is irrelevant because, pursuant to a restructuring that occurred in March 2023,[8] neither he nor Orange has any power, on their own, to access documents held by WSOU Investments for purposes of the subpoena.  (Dkt. 93 at 4–6); (*see* Dkt. 72 at 8–10, 13).  As a result of the restructuring, Etchegoyen

---

[8] The details of the restructuring have been redacted from the public filings, so the Court will only discuss as much of the details as is necessary to resolve the discovery dispute.  The Court also notes that the record supports a finding that, overall, this restructuring was not improperly motivated by litigation.  The Court need not make a finding on this fact, though, and declines to do so.

In his declaration, Jordan Mikes, the current chair of WSOU Investments, states that the restructuring was the result of "an arm's length commercial agreement . . . preceded by numerous weeks of negotiations among the relevant parties[.]"  (Dkt. 72 at 25).  He further testifies that the timing of the restructure was not part of any litigation strategy but was coincidental and "motivated by reasons that have nothing to do with" the company's legal battles.  (*Id.*).

resigned his position as an officer of WSOU Investments and, therefore, no longer uses his WSOU Investments email account.  (Dkt. 72 at 8).

The record contains no evidence that would suggest, though, that Etchegoyen no longer has *access* to his WSOU Investments email account.[9]  Evidence in the record reflects that Orange never had its own email account.  (Dkt. 72 at 7).  And, based on statements made by counsel for Orange at multiple hearings, the record supports a finding that Etchegoyen used his WSOU Investments email account to conduct business on behalf of Orange.  (Dkt. 62 at 16–18) ("Etchegoyen did talk to people . . . through his plaintiff [WSOU Investments] e-mail account on behalf of the company [Orange] that has the direct relationship with those entities."); (Dkt. 90 at 11) (when Judge Denney posed "[m]y understanding was in prior hearings there was some representation made or it was in the papers that he would do business on behalf of Orange Holdings by using his e-mail account or WSOU Investments . . . [i]s that not accurate?" counsel for Orange did not deny the accuracy of that understanding and instead stated that Etchegoyen "does not have an email account now.").

### B.    Procedural Background

According to Salesforce's original motion to compel, which initiated this Court's involvement in the case, "[t]he discovery sought from Orange generally relates to a case-dispositive license defense that arises from a settlement and license agreement that Salesforce

---

[9]     Etchegoyen claims that he sought to clarify his legal ability to search through the email account and to obtain permission from the WSOU Investments board to access the email account—in order to produce the documents requested in the subpoena—and, in response, the board communicated that those were not his documents.  (Dkt. 93 at 9); (Dkt. 72 at 9).  Although there is no evidence that the board denied him access to the account, the record does reflect that the board refused to provide Etchegoyen with the documents that they claimed did not belong to him.  (Dkt. 93 at 9); (Dkt. 72 at 9).

signed with Uniloc, a different patent holding company founded by the same individual that founded WSOU Investments, Craig Etchegoyen." (Dkt. 1 at 2). The original subpoena that Salesforce issued as a part of the Texas litigation "seeks documents and testimony concerning the formation, structure, governance, and ownership of Orange, the relationship between Orange and Mr. Etchegoyen, and the relationship between Orange and WSOU Investments." (*Id.* at 3). In the motion, Salesforce alleged that Orange "refused to comply with any part of the subpoena." (*Id.*).

Judge Denney granted the motion "with respect to request for production of documents 1 through 12 of the subpoena" and denied it as to the "production of documents 13 through 25," instead directing the parties "to meet and confer, in good faith, to attempt to narrow scope of the request[.]" (Dkt. 41 at 2). Apparently, the Parties were unable to abide by Judge Denney's direction, and based on their reports, Judge Denney ordered[10] Orange to produce documents 13, 14, 15, 17, 18, 22, and 24 of the subpoena. (Dkt. 61 at 2–3). In that same hearing, Judge Denney made a factual finding that Orange, the only entity actually subject to the subpoena at issue, is controlled by Etchegoyen. (*Id.* at 3).

Still, Orange's document production was insufficient, so Salesforce filed a motion for contempt disputing Orange's claim it does not have "possession, custody, or control . . . over documents possessed either by WSOU Holdings[11] or WSOU Investments." (Dkt. 63 at 13).

---

[10] The Court notes that Orange did not file objections to either of Judge Denney's rulings ordering that Orange produce documents. (*See* Dkt. 41); (Dkt. 61).

[11] To the extent that the June Order requires Orange to produce documents in the custody of WSOU Holdings, the Court will affirm that requirement without discussion. First, it seems that, while Orange may have raised this in their response to Salesforce's motion for sanctions, (Dkt. 68 at 15), Orange has since abandoned this particular line of argumentation in its Objections to the June Order. (*See generally* Dkt. 93). Second, the June Order correctly states that "it is undisputed that Orange has a majority interest in . . . WSOU Holdings." (Dkt. 91 at 12–13); (Dkt. 100 at 2–3); (Dkt. 107 at 8). Salesforce, in its original motion

1    Salesforce argued that Orange does has legal control over documents possessed by WSOU

2    Holdings and WSOU Investments, and, therefore, "must produce them as ordered by the Court."

3    (*Id.* at 20–21).   Moreover, Salesforce argued that Etchegoyen is Orange's "alter ego," meaning

4    that any documents in his possession are also in the possession and custody of Orange and must

5    be produced.   (*Id.* at 21).   In response, Orange argued that Salesforce conflated Judge Denney's

6    finding that Etchegoyen *controls* Orange with "a full-scale alter ego finding," a finding it claims

7    that no court has made. (Dkt. 68 at 17).   Moreover, Orange argued that Salesforce had not carried

8    its burden of showing that Orange has control of documents belonging to WSOU Holdings and

9    WSOU Investments, therefore Orange had substantially complied with Judge Denney's rulings

10   because it had "produced every responsive document within its control." (*Id.* at 13–15).

11        Judge Denney's June Order found that Orange had failed to comply with his previous

12   rulings "to the extent that Orange has not produced responsive documents . . . because Etchegoyen

13   stopped using his WSOU Investments email account that he previously used to conduct business

14   on behalf of Orange[.]" (Dkt. 91 at 11).   But the June Order also found that Orange had not failed

15   to comply to the extent that the requested documents "are maintained by WSOU Investments."

16   (*Id.* at 15).   Based on the factual finding that Orange, as a fourth-generation entity, "only has a

17   minority interest in WSOU Investments," Judge Denney made the legal conclusion that Orange

18   does not have the requisite control over documents possessed by WSOU Investments.  (*Id.* at 13).

19   Moreover, Judge Denney rejected the argument that Etchegoyen is the alter ego of Orange, an

20

21   for sanctions, (Dkt. 63), points to evidence in the record, (*id.* at 16–17); (Dkt. 64-4 at 33, 22–23), supporting
22   a determination that Orange's majority interest in WSOU Holdings gives Orange the relevant control—the
     legal right to obtain documents on demand—over WSOU Holdings.  *See In re Citric Acid Litig.*, 191 F.3d
23   1090, 1107 (9th Cir. 1999).

24

1  argument which would have still required Salesforce to further establish that Etchegoyen had legal

2  control over WSOU Investments, enabling him to produce the documents within its control on

3  Orange's behalf.  (*Id.* at 14).

4      While the June Order ultimately declined to hold Orange in contempt, Judge Denney did

5  order Orange to "conduct a search of the WSOU Investments email account that was used by

6  Etchegoyen to conduct business on behalf of Orange" and produce any "responsive emails or

7  documents" to Salesforce.  (*Id.* at 15–16).  Lastly, Judge Denney found it appropriate to impose

8  sanctions on Orange in the form of attorney's fees, (*id.* at 15), as well as to again reject Orange's

9  request to transfer the dispute to Texas based on Rule 60 reconsideration.  (*Id.* at 8).

10   **II.**    **Legal Standard**

11   **A. Objections to Non-Dispositive, Pretrial Magistrate Orders**[12]

12     Rule 72(a) allows parties to file timely objections to pretrial orders issued by a magistrate

13 judge on non-dispositive matters and sets the standard for courts reviewing such objections.  Fed.

14 R. Civ. P. 72(a).  Non-dispositive matters are those that "do[] not end or dispose of a case."  *United*

15 *States v. Saldana-Beltran*, 37 F. Supp. 3d 1180, 1185 (S.D. Cal. 2014); *S.E.C. v. CMKM*

16 *Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013); *see also* 28 U.S.C. § 636(b)(1)(A) (listing

17 which pretrial matters are excepted from a magistrate judge's authority and reiterating the Rule

---

[12]    The Parties do not dispute that the June Order involves only non-dipositive matters and is, therefore, subject to Rule 72(a) and not Rule 72(b).  *See Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991) ("Non-dispositive issues include discovery sanctions." (cleaned up)); *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1241 n.1 (S.D. Cal. 2013) (explaining that an order transferring venue does not address there merits of the case and is, therefore, a non-dispositive matter) (collecting cases); *see also Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1132–33 (D. Or. 2019) (explaining that types of motions listed in Section 636(b)(1)(A) not an exhaustive list of pretrial matters excepted from a magistrate judge's authority).

72(a) standard of review for those pretrial matters within a magistrate judge's authority).  When considering an objection, the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*  Under this standard, the district court is required to "reject" a magistrate judge's determination of a non-dispositive matter "*only* when the magistrate judge's order is either clearly erroneous or contrary to law." *adidas Am., Inc. v. Fashion Nova, Inc.*, 341 F.R.D. 263, 265 (D. Or. 2022) (emphasis in original).  "This means that the Court will review the magistrate judge's factual findings for clear error and legal conclusions de novo." *Id.*

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court *on the entire evidence* is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (emphasis added).  Only when the district court "is left with a *definite and firm conviction* that a mistake has been committed" may it set aside a factual determination. *Equal Emp. Opportunity Comm'n v. Peters' Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014) (internal quotation marks and citation omitted) (emphasis added).  Importantly, "[t]he reviewing court may not simply substitute its judgement for that of the deciding court." *Doe v. Washoe Cnty.*, 2006 WL 3782851, at *2 (D. Nev. Dec. 22, 2006).

As to review of legal conclusions, the contrary to law standard requires district courts to engage in "independent review of purely legal determinations by the magistrate judge." *Jones v. Corr. Corp. of Am.*, 2011 WL 1706838, at *4 (D. Ariz. May 5, 2011) (citation omitted); *see Doe,* 2006 WL 3782851, at *2 (explaining that the contrary to law standard requires courts to conduct a de novo review).  A legal determination is contrary to law "if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Na Pali Haweo Cmty. Ass'n v. Grande*,

252 F.R.D. 672, 674 (D. Haw. 2008) (citation omitted).  If the district court determines that a legal conclusion is contrary to law, it must modify or set aside that part of the magistrate judge's order. Fed. R. Civ. P. 72(a).

### B.     Motion to Stay[13]

"Litigants may seek relief from the operation of a magistrate judge's non-dispositive order by filing a motion to stay that order."  *PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1094 (D. Nev. 2022).  "While a stay is not available as a matter of right, federal courts possess the inherent authority to impose stays pending challenges to their orders in appropriate circumstances."  *Id.*; *see also Nken v. Holder*, 556 U.S. 418, 433 (2009) (explaining that a stay is "not a matter of right, even if irreparable injury might otherwise result," because a stay is an exercise of "judicial discretion" whose propriety depends on "the circumstances of the particular case" (citations omitted)).  "In considering whether to stay a magistrate judge's order pending Rule 72 objections, courts typically apply the same four-factor test used for a stay pending appeal."  *Pablovich v. Rooms to Go Louisiana Corp.*, 2021 WL 928030, at *2 (E.D. La. Mar. 11, 2021) (collecting cases).

Although "the issuance of a stay is left to the court's discretion," its judgment is guided by "sound legal principles."  *Nken*, 556 U.S. at 434 (citation omitted).  "Those legal principles have been distilled into consideration of four factors: (1) whether the stay applicant has made a strong

---

[13]     It should be noted that "[i]t is well-established law that the filing of an objection to a magistrate judge's order on a non-dispositive motion does not automatically stay that order's operation."  *Castelan-Gutierrez v. Bodega Latina Corp.*, 2018 WL 4050493, at *1 (D. Nev. Mar. 30, 2018).  Because "all orders and judgments of courts must be complied with promptly," a party whose motion to stay is pending still required to "comply promptly with the order pending appeal."  *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."  *Id.*

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (cleaned up) (citation omitted). Most critical to a court's analysis are the first two factors. *Id.*

"The party requesting a stay bears the burden of showing the circumstances justify an exercise of the Court's discretion." *PlayUp*, 635 F. Supp. 3d at 1095 (citing *Nken*, 556 U.S. at 433–34). This burden is especially steep in the context of a request to stay a magistrate judge's non-dispositive discovery order because "it is difficult to establish a sufficient likelihood of success given the deferential standard of district judge review and irreparable harm is generally not established based on the burden or expense of providing discovery." *Id.* Thus, such requests are often denied. *Id.* (citing *Montgomery v. Risen*, 2015 WL 5167628, at *2 (S.D. Fla. Sept. 3, 2015)). In addition, because a stay is an "intrusion into the ordinary processes of administration and judicial review," *Nken*, 556 U.S. at 427 (citation omitted), requests to "stay [] a magistrate judge's discovery order should be granted sparingly." *PlayUp*, 635 F. Supp. 3d at 1095 (citation omitted).

### III.   Analysis

#### A.   Orange's Objections to the June Order

Orange objects that (1) it "should not be ordered to pay attorney fees incurred in Salesforce's repeated attempts to compel documents that [it] has [no] way to produce," and that (2) Judge Denney should have reconsidered its renewed motion to transfer because other courts have granted transfer to Texas, where "the documents Salesforce seeks . . . have previously been

denied in the underlying litigation." (Dkt. 93 at 3). For the following reasons, the Court finds neither objection persuasive.

### 1.    Denial of Renewed Motion to Transfer

Orange identifies no factual determination in the June Order that constitutes a clear error. On this Court's review, it is evident that Judge Denney's determination considered the new facts presented by Orange—that two other jurisdictions had transferred similar motions to the Western District of Texas, which had made a ruling inconsistent with the one in this Court—but did not find them persuasive reasons to grant relief under Rule 60. (Dkt. 91 at 7–8). Moreover, the June Order does not apply the wrong legal standard or misapply the proper standard, despite Orange's arguments to the contrary.

The June Order states that the "possibility of inconsistent rulings" and the fact that the court in Texas "had addressed arguments similar to those being advanced by Salesforce in this district" were "specially considered" in Judge Denney's original decision to deny the request. (*Id.* at 8). Soon after that decision, when the Judge Denney held a hearing to discuss the Parties' recent status report, he also reiterated that he "is not limited by the parameters of a discovery ruling by the Court in the Western District of Texas with respect to WSOU Holdings and WSOU Capital Partners." (Dkt. 58 at 1–2). Judge Denney's June Order makes no factual mistakes—it simply does not draw the conclusions from those facts that Orange would prefer.

As to any legal errors, Orange first emphasizes that other courts have transferred this dispute to the Western District of Texas, where the court has declined to order discovery of documents similar to the ones sought by Salesforce in this court. (Dkt. 93 at 17–18); (*see also* Dkt. 69 at 5–8). Orange argues that Judge Denney's refusal to transfer the case is an abuse of

discretion.  (Dkt. 93 at 18).  But abuse of discretion is not the standard of review for objections to magistrate orders on non-dispositive matters.  *Compare* Fed. R. Civ. P. 72(a) *and Lattice Semiconductor Corp. v. Interface Elec. Corp.*, 37 F.3d 1505 (9th Cir. 1994) ("We review for abuse of discretion . . . decisions regarding transfer of venue.").  Using the correct standard, Judge Denney's denial of transfer must stand because it properly applies the Rule 45(f) standard for motions to transfer.

The real issue seems to be that Orange believes that Rule 45(f) *requires* transfer when the "person subject to the subpoena consents," but the text of the Rule states that a court "*may* transfer a motion" when the subject consents.  (*See* Dkt. 94 at 17–18); Fed. R. Civ. P. 45(f) (emphasis added).  Orange offers no authority for the direct proposition that consent to transfer makes the requested transfer mandatory under Rule 45.  While transfer may be favorable in similar circumstances for purposes of judicial economy, Judge Denney's decision to prioritize other considerations and deny transfer is certainly not contrary to the letter of the law.

## 2.    Partial Grant of Motion for Contempt

The June Order's ruling issuing sanctions against Orange is based on the following factual findings: that Etchegoyen used his WSOU Investments email to conduct business on behalf of Orange, that no facts in the record established that Etchegoyen could no longer access that email, that Orange, as controlled by Etchegoyen, failed to produce documents contained in that email account to which it has access, and that, therefore, Orange was not in compliance with Judge Denney's previous orders compelling disclosure.  (Dkt. 91 at 11).  Each of these factual findings are reviewed for clear error.  Based on the Court's review of the record, found above, the Court is not "left with a definite and firm conviction that a mistake has been committed" such that is must

it set aside these determinations.  *See Peters' Bakery*, 301 F.R.D. at 484; *see also Doe*, 2006 WL 3782851, at *2 ("The reviewing court may not simply substitute its judgement for that of the deciding court.").

Based on these factual findings, Judge Denney ordered Orange to search the email account and produce the resulting documents.  (Dkt. 91 at 15–16).  Courts are empowered to enforce compliance with their orders.  *Don't Shoot Portland v. City of Portland*, 503 F. Supp. 3d 1022, 1031 (D. Or. 2020) (citing 18 U.S.C. § 401); *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders[.]").  The Court finds that Judge Denney's ruling ordering Orange to search for and produce documents is a proper use of the inherent power of courts to enforce compliance with previous orders.  Orange has offered no authority to the contrary.

Believing that it is under "threatened contempt," (Dkt. 93 at 13), Orange asks the Court to "reject the magistrate judge's order to the extent that it requires Orange" to "conduct an improper search of [the] former email account[.]"  (*Id.* at 13).  But based on this Court's independent review, the June Order compelling Orange to search for and produce certain documents did not apply an incorrect legal standard or fail to consider an element of the applicable standard.  *See Na Pali Haweo Cmty. Ass'n*, 252 F.R.D. at 674.  Based on unmistaken facts, Judge Denney determined that Etchegoyen, who controls Orange, has access to the email account containing documents requested in the subpoena, therefore, he must search the email account and produce those documents in his custody on behalf of Orange.  *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).

Orange seems to believe that Judge Denney's ruling was contrary to law in so far as it cannot support a finding of civil contempt, (Dkt. 93 at 11), arguing that "there is no world in which Orange can be held in contempt for not producing documents that only [WSOU Investments] can legally obtain." (Dkt. 107 at 6). But this argument proceeds on two faulty premises. First, the Court has already determined that the record supports a factual finding contrary to the facts implicit in Orange's argument. Second, the June Order *expressly declined to hold Orange in contempt*. (Dkt. 91 at 15). The June Order only compels Orange to comply with its discovery obligations—it does not "threaten[] contempt" as Orange apparently believes. (Dkt. 93 at 13). Thus, Orange's alleged reasonable efforts to comply with previous discovery orders are an irrelevant defense—which misunderstands the applicable law—because Orange has not been held in contempt. (*See* Dkt. 93 at 7, 11); *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) ("[I]f a defendant's action 'appears to be based on a good faith and reasonable interpretation of (the court's order),' he should not be held in contempt." (citation omitted)).

Finally, the Court finds nothing contrary to law regarding the June Order's imposition of sanctions. The authority to sanction pursuant to a court's "local rules emanates from the trial court's inherent power." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989). Judge Denney properly relied on the authority given to the Court pursuant to its Local Rules, which empowers "the court" to impose "any and all" sanctions on a party who "[f]ails to comply with any order of this court." LR IA 11-8(e).[14] The Local Rules, when it refers to "the court," is

---

[14]    Even if the basis for sanctioning Orange was not this Court's Local Rules, "magistrates may impose prospective sanctions pursuant to Rule 37 where such sanctions are necessary to enforce compliance with a valid discovery order." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (finding that the district court did not err in affirming magistrate judge's award of sanctions).

referring to "the United States District Court for the District of Nevada *and to a judge*, clerk, or deputy clerk *acting on the court's behalf* on a matter within the court's jurisdiction."  LR AI 1-3(c) (emphasis added).  And, of course, the term "judge" includes magistrate judges.  LR IA 1-3(e).  Orange's attempt to read the Court's Local Rules otherwise, accordingly, fails.  (*See* Dkt. 93 at 16).  Orange has offered no legal authority—and the Court's review finds none—supporting the argument that magistrate judges lack jurisdiction to order such sanctions under the Local Rules.

Orange's reliance on *Beverly v. Interior Elec. Inc. Nevada* is also inapposite because the Ninth Circuit in that case was concerned only with a court's authority to sanction as provided by Rule 45, not the authority to sanction under a court's local rules.  2023 WL 355692, at *2 (9th Cir. Jan. 23, 2023); *see also* Fed. R. Civ. P. 45.  Similarly, Orange misapplies the law in its argument that there needed to be a finding of bad faith or willfulness in order to impose sanctions because, again, sanctions were imposed pursuant to authority derived from the Local Rules—not from a court's inherent sanctioning authority.[15]  *See In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003) ("Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad faith or willful misconduct.").  Thus, the Court declines to modify or set aside the sanctions issued in the June Order.

---

[15]    Even if finding of bad faith or willful misconduct were required, the June Order would satisfy this requirement because Judge Denney noted his perception that "the failure to produce documents on the basis that Etchegoyen is no longer using his WSOU Investments email account [is] a clear example of gamesmanship." (Dkt. 91 at 11).  While the overall restructuring was not necessarily improper, its alleged effect on Etchegoyen's email access can be considered gamesmanship.

**B.**     **Salesforce's Objection to the June Order's Partial Denial of Motion for Contempt**

Salesforce objects "to the portion of the Order denying its motion for contempt 'insofar as Salesforce asserts that Orange [Holdings] did not comply with this court's order when it asserted in its further responses that to the extent responsive documents existed, they are maintained by WSOU Investments.'"  (Dkt. 100 at 2) (quoting Dkt. 91 at 15, 17).  Salesforce argues that this portion of the June Order "is contrary to law because it did not consider Salesforce's argument that Orange had and continues to have a legal obligation to produce documents belonging to WSOU Investments despite its alleged corporate reorganization and repeated attempts to evade its discovery obligations."  (*Id.*).  For the following reasons, the Court finds the objection unpersuasive.

In order to come to this conclusion, the June Order first had to determine whether Orange had legal control over WSOU Investments and the documents in its possession.  If Salesforce could establish that such control existed, then Orange would be required to produce the documents allegedly in WSOU Investments' control.  *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("The party seeking production of the documents [] bears the burden of proving that the opposing party has such control."); *see also* Fed. R. Civ. P. 34(a).  Control is defined as "the legal right to obtain documents upon demand."  *In re Citric Acid Litig.*, 191 F.3d at 1107 (citation omitted).  Whether there is such a "[l]egal right is evaluated in the context of the facts of each case."  *Thomas v. Hickman*, 2007 WL 4302974, at *14 (E.D. Cal. Dec. 6, 2007).

Relevant to the context in this case, "[a] corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls."  *Int'l Union of Petroleum &*

*Indus. Workers, AFL-CIO*, 870 F.2d at 1452.  With respect to ownership, "courts commonly require a parent to produce documents from a wholly owned subsidiary."  *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 2022 WL 2156036, at *2 (C.D. Cal. May 2, 2022).  With respect to control— whether the party entity has a legal right to demand and obtain documents possessed by the non-party entity—courts generally consider the following factors: commonality of ownership; exchange or intermingling of directors, officers, or employees; exchange of documents between the corporations in the ordinary course of business; benefit or involvement by the non-party corporation in the transaction; and involvement of the non-party corporation in the litigation.  *Id.* A fact-specific determination, "control must be firmly placed in reality, not in an esoteric concept[.]"  *HDT Bio Corp. v. Emcure Pharms., Ltd.*, 2022 WL 16835758, at *7 (W.D. Wash. Nov. 9, 2022) (cleaned up).

The record leaves no question as to the issue of ownership—Orange is not a parent company that wholly owns WSOU Investments.  Instead, the question is whether the facts in the record establish that Orange *wholly controls* WSOU Investments.  *See Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d at 1452.  Central to the question of control "is the relationship between the party and the . . . entity having actual possession of the document."  *Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*, 2016 WL 7634440, at *2 (S.D. Cal. Mar. 10, 2016) (citation omitted). To establish legal control, "[t]he requisite relationship is one where a party can order the . . . entity in actual possession of the documents to release them."  *Id.* (citation omitted).  Such a relationship "is usually the result of statute, affiliation or employment."  *Thomas*, 2007 WL 4302974, at *14.

Prior to the March 2023 restructuring, company decisions for WSOU Investments were made by consent of the Members owning a majority interest in the company.  (Dkt. 64-4 at 2, 22).

But this changed as a result of the restructuring, and now decisions are made by a majority vote of the Board of Managers.  (Dkt. 72 at 8, 20, 25, 227).  Moreover, the current governing documents limit the right of certain board members and interest holding members to obtain the documents at issue in this dispute.  (*See* Dkt. 72 at 8–10, 13).  Thus, WSOU Investments' current governing structure undermines the argument that its wholly controlled by Orange, as an interest holding member, or Etchegoyen, as a member of the board.[16]

Disregarding the control structure laid out in WSOU Investments' governing documents, the factors indicating control also do not support a finding of control.  The first factor supports Judge Denney's finding that, as an indirect subsidiary of Orange, WSOU Investments is not "a wholly owned subsidiary" of Orange.  *See K-fee Sys. GmbH*, 2022 WL 2156036, at *2; *see HDT Bio Corp.*, 2022 WL 16835758, at *8 ("[T]he mere fact that a corporation owns some percentage of a subsidiary does not automatically render the parent corporation in control of the subsidiary's documents.").  The evidence supporting the second factor—that Etchegoyen has had roles at both companies—"does weigh slightly in favor of finding control," but this factor on its own is

---

[16]    Salesforce attempts to overcome the effects of the restructuring by relying on the decision in *Illumina Cambridge Ltd. v. Complete Genetics, Inc.*, 2020 WL 820327 (N.D. Cal. Feb. 19, 2020).  (Dkt. 100 at 8).  The court in *Illumina* explained that "a party cannot be permitted to circumvent the rules of discovery by engaging in conduct during the litigation that eliminates its responsibility to produce responsive documents to an opposing party."  *Id.* at *9 (internal quotation marks and citations omitted).  The parent company and subsidiary involved in that case restructured to swap places before a subpoena could be served.  *Id.* at *8.  While subsidiaries do not generally "have legal control over documents that a parent possesses," the "responsibility" of the subpoenaed party "to produce documents and information in [its] possession didn't end just because [the two companies] swapped places[.]"  *Id.* at *8–10.
    While the general principle is true that it is impermissible to restructure in effort to to avoid discovery, the record contains evidence that the overall March 2023 changes were coincidental—not intentional—and Salesforce has offered no evidence to rebut that claim.  Therefore, the Court is not left with a firm conviction that Judge Denney's factual finding on the issue of restructuring is mistaken, and the legal conclusion that flows from it—that Orange does not have legal control over WSOU Investments—is not contrary to law.

insufficient to establish that Orange wholly controls WSOU Investments—especially since Etchegoyen is the only example of such intermingling. *See HDT Bio Corp.*, 2022 WL 16835758, at *8 (finding that evidence companies "shared numerous directors, officers, and employees" was "not dispositive"). The third factor weighs against a finding of control because Etchegoyen's use of his WSOU Investments email for Orange-related business is a far cry from evidence that the two companies "regularly shared sensitive business information[.]" *See id.* (explaining that this factor, too, is alone not dispositive).

The fourth factor, concerning the non-party's "connection to the transaction at issue in the litigation" and the degree to which the non-party "will benefit from the outcome of the case," *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2016 WL 6522808, at *9 (S.D. Cal. Nov. 3, 2016), does not weigh favor of a finding of control. The transaction at issue in the underlying case is a confidential settlement agreement between Salesforce and Uniloc. While the release in the agreement is broad, Orange's connection to the original transaction is not so strong as to warrant a finding of control. *See HDT Bio Corp.*, 2022 WL 16835758, at *9 (finding that the record indisputably established that non-party entity "benefited from and was involved in the transaction underlying this dispute" supporting a finding of control). Finally, as to non-party Orange's involvement in the litigation, Salesforce has failed to establish that this factor weighs in favor of a finding of control. The argument raised in their motion for contempt focuses on WSOU Investments' involvement in the litigation, (Dkt. 63 at 20), but the relevant question is the extent of involvement by Orange in the litigation, as the non-party. The Court is not persuaded that Orange's involvement in this discovery dispute warrants a finding that it has legal control over WSOU Investments. Based both on these factors and on WSOU Investments' current governing

structure, Salesforce cannot establish that Orange has the legal right to obtain documents upon demand from WSOU Investments.[17]

## C.  Motion to Stay

Orange requests that the Court stay enforcement of Judge Denney's ruling on the motion for contempt "pending resolution of [the] discovery dispute" giving rise to his June Order.  (Dkt. 95 at 18).  The Court's Order resolves the underlying dispute—it affirms Judge Denney's factual findings as ones supported by the record and finds, through independent review, that the resulting legal conclusions are not contrary to law.  Thus, the motion to stay is moot.[18]  Even if it were not, though, it is not clear that Orange has borne its especially steep burden in the context of a request to stay a magistrate judge's non-dispositive discovery order.  *See PlayUp*, 635 F. Supp. 3d at 1095 ("[I]t is difficult to establish a sufficient likelihood of success given the deferential standard of district judge review and irreparable harm is generally not established based on the burden or expense of providing discovery.").

---

[17]     While the June Order also contains discussion of whether Etchegoyen is the alter ego of Orange such that, by way of him, Orange has control over WSOU Investments, (Dkt. 91 at 13–14), the Court need not discuss that issue because Salesforce does not raise that argument in its Objections.  (*See* Dkt. 100).

[18]     "Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists."  *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (internal quotation marks and citation omitted).

**CONCLUSION**

IT IS HEREBY ORDERED that Orange's Objections, (Dkt. 93), are **OVERRULED**.

IT IS FURTHER ORDERED that Salesforce's Objections, (Dkt. 100 and 102), are **OVERRULED**.

IT IS FURTHER ORDERED that Magistrate Judge Denney's Order, (Dkt. 91), is **AFFIRMED**.

IT IS FURTHER ORDERED that Orange's Motion to Stay, (Dkt. 95), is **DENIED as MOOT**.

IT IS FURTHER ORDERED that the Motions to Seal, (Dkt. 92); (Dkt. 101); (Dkt. 106); (Dkt. 110), are **GRANTED**.

IT IS SO ORDERED.

Dated December 11, 2023.

_____
ROBERT C. JONES
United States District Judge