UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WSOU INVESTMENTS, LLC,<br><br>　　Plaintiff<br><br>v.<br><br>SALESFORCE, INC.,<br><br>　　Defendant | Case No.: 3:23-cv-00023-RCJ-CSD<br><br>**Order**<br><br>Re: ECF Nos. 97/99 |

Before the court is Salesforce's motion for reasonable attorney's fees. (ECF Nos. 97/99.) Orange Holdings, Inc. filed a response. (ECF Nos. 104/105.) Salesforce filed a reply. (ECF Nos. 115/117.)[1] For the reasons set forth below, Salesforce's motion requesting fees is granted in part and denied in part.

## I. BACKGROUND

WSOU Investments is involved in patent litigation with Salesforce in the Western District of Texas. Salesforce served a subpoena on Orange Holdings (Orange), a Nevada corporation. Salesforce seeks information and documents from Orange related to Salesforce's license defense in the patent litigation. Essentially, Salesforce claims in the patent litigation that it entered into a license agreement in 2016 with Uniloc Luxembourg S.A. and Uniloc USA, Inc., that prevented Uniloc and its directors from suing Salesforce for patent infringement. Salesforce asserts that Mr. Etchegoyen, the former CEO of Uniloc, is in control of Orange and heads up a variety of other entities that are majority shareholders in WSOU Investments. As such, Salesforce maintains that WSOU Investments is precluded from suing Salesforce.

---

[1] The sealed versions of the filings are set forth at ECF Nos. 99, 105 and 117.

Salesforce filed a motion to compel a response to the subpoena in this District. Orange opposed the motion and also filed a motion to transfer the issue of subpoena enforcement to the Western District of Texas. The court denied Orange's motion to transfer, and granted the motion to compel as to certain requests and ordered the parties to meet and confer to attempt to narrow the scope of other requests. At a hearing on April 10, 2023, the court ordered Orange to produce additional documents in response to some of Salesforce's requests.

On May 5, 2023, Salesforce filed a motion for contempt against Orange for its failure to comply with the court's orders. Orange filed a renewed motion to transfer to the Western District of Texas. The court held a hearing on June 12, 2023, and issued an order denying the renewed motion to transfer and granting the motion for contempt in part.

The court found that Orange failed to comply with the prior orders to the extent it did not produce responsive documents on the basis that Mr. Etchegoyen was no longer using his WSOU Investments' email account that he had used to conduct business on behalf of Orange. The court declined to hold Orange in contempt under Rule 45. Instead, the court imposed sanctions as a result of Orange's failure to comply with the court's orders pursuant to Local Rule 11-8(e). The court concluded that an appropriate sanction was for Orange to pay Salesforces' reasonable attorney's fees incurred in filing the motion for contempt. The court directed Salesforce to file a motion requesting the reasonable amount of fees incurred in filing its motion for contempt.

Orange filed an objection to that order. Salesforce also objected to portions of the order.

Salesforce then filed its motion seeking $98,929.66 in fees incurred in connection with the motion for contempt and its reply brief.

On December 11, 2023, District Judge Jones issued an order overruling both Orange's and Salesforce's objections. Judge Jones affirmed the order imposing an award of attorney's fees

as a sanction against Orange for failing to comply with the court's orders. (ECF No. 119.) As such, the fees issue is now ripe for decision.

## II. LEGAL STANDARD

When an award of attorney's fees is authorized, the court must calculate the proper amount of the award to ensure it is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The court must first determine the "lodestar" figure. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (citation and quotation marks omitted). The court should exclude from the lodestar calculation hours that were not "reasonably expended," including hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

The lodestar amount is presumptively reasonable, however, "the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho*, 523 F.3d at 978. In determining whether to adjust the lodestar, the court looks at several factors adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and the ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id*. The *Kerr* factors have been incorporated into Local Rule 54-14(a)(3).

Many of the *Kerr* factors have been subsumed into the lodestar as a matter of law, including the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, the results obtained, and the contingent nature of the fee. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64, n. 9 (9th Cir. 1996) (citation omitted).

The party seeking the award of fees must submit evidence in support of the request. *Van Gerwen v. Guar. Mut. Life Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The request for fees must include a reasonable itemization and description of the work performed, as well as an itemization of all costs sought to be charged as part of the fee award. LR 54-14(b). The request for fees must also be accompanied by an affidavit from the attorney responsible for the billings in the case authenticating the information contained in the motion and confirming the bill was reviewed and edited and that the fees and costs charged are reasonable. *Id*.

The party opposing the fee request bears the burden of rebuttal "that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citations omitted).

### III. DISCUSSION

**A. Hourly Rates**

In determining whether the hourly rates are reasonable, the court must ensure the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). Generally, "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citation omitted). "[R]ates outside the forum may be

used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Id*. (quoting *Gates,* 987 F.2d at 1405). The court may also rely on its own experience to determine a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

**1. The Requested Rates**

Salesforce is represented in this matter by lawyers from the Silicon Valley office of the law firm of Quinn Emanuel. Five attorneys from Quinn Emanuel worked on the contempt motion and reply. Ray Zado, Esq. and Todd Briggs, Esq., are partners with over 20 years of experience, and each request an hourly rate of $1,340. Ian Wang, Esq.[2], is an associate with fifteen years of experience, and his requested hourly rate is $1,155. Christopher Smith, Esq. and Christopher Sabbagh, Esq., are third-year associates, and their requested hourly rate is $885. Each of these attorneys states in a declaration that his rate is standard for attorneys with the same level of experience.

**2. The Relevant Community**

Orange argues that these are not the prevailing rates in the District of Nevada, and Salesforce did not demonstrate that the District of Nevada should not be used as the relevant community.

The court agrees with Orange. Under the general rule, the District of Nevada is the relevant community for determining the prevailing market rate. The court may use rates outside the District of Nevada *if* the requesting party presents evidence that local counsel was unavailable, meaning local counsel was unwilling or unable to perform this type of work.

---

[2] According to the docket, Mr. Wang is in Quinn Emanuel's Salt Lake City, Utah office.

5

Salesforce's motion does not address the relevant community, but instead, simply requests the rates that its five attorneys customarily charge. Nothing in the motion itself or declarations would lead the court to conclude that this contempt motion required any particular expertise or specialization or that experienced litigators in Nevada could not handle this assignment. In fact, under the paragraph concerning the skill required to perform the legal service properly, Salesforce states:

> The skill of Quinn Emanuel's attorneys was required to identify Orange's obstruction and then prepare the motion for contempt and reply in support of the motion. Counsel utilized its familiarity with the standard third-party subpoena process to identify irregularities and delay in Orange's responses. Counsel's skill was also required to research the substantive legal issues to determine whether the federal rules and caselaw supported Salesforce' position and applied to the facts of the case.

(ECF No. 99 at 8:8-13.) This does not reflect a skill unique to Quinn Emanuel, but applies to most attorneys engaged in civil litigation.

It was only when Orange raised this issue in its opposition that Salesforce addressed the relevant community. Salesforce argues in its reply brief that its counsel from Quinn Emanuel were uniquely qualified to handle enforcement of the subpoena against Orange. Salesforce claims this is because it was the only law firm with direct knowledge of the complex factual record and legal issues relating to the license defense in the underlying patent litigation. It maintains that the contempt motion and reply were anything but routine, citing the factual background and procedural history of the underlying patent litigation that lead Salesforce to subpoena documents from Orange. It is also noted that Quinn Emanuel is counsel for Salesforce in the underlying patent litigation and also in prior litigation which is the basis for the license defense.

Along with its reply, Salesforce submitted the declaration of Leigh Goddard, Esq., a partner with the local law firm McDonald Carano, LLP, who is serving as local counsel for Salesforce in this action. She states she is familiar with attorneys in the community who represent litigants seeking to enforce subpoenas in Nevada, and she believes that Quinn Emmanuel is uniquely qualified to handle the enforcement of the subpoena to Orange for documents related to Salesforce's license defense in the patent litigation in the Western District of Texas. She indicates that it is the only law firm with direct knowledge of the complex and extensive factual record and legal issues involved. She is not aware of attorneys in Nevada who had the knowledge or familiarity with the facts and issues to pursue the motions to enforce this subpoena. (ECF Nos. 115-1/117-1.)

The court does not accept the premise that a local law firm is "unavailable" for purposes of determining the relevant community in a fee request because it does not have direct knowledge of the facts giving rise to the litigation. While it may have taken a local firm some time to get up to speed on the factual background leading to this subpoena enforcement action, that is not a process unique to this case. Lawyers frequently are required to take time to investigate and get up to speed on the factual background of a case before proceeding with litigation. This is particularly true in actions filed to enforce a subpoena under Rule 45 where the subpoena is issued in connection with litigation that is ongoing in another district. The factual background leading to this enforcement action may be somewhat complex, but the issues that required research and analysis concerning enforcement of the subpoena in this case, including whether an entity has control of documents requested in a subpoena, corporate structure, and alter ego allegations, are not unique to patent litigators.

1    Moreover, the court is troubled by the fact that this declaration was only submitted in
2 Salesforce's reply, and Orange did not have an opportunity to address the substance of the
3 declaration. The court appreciates Ms. Goddard's statements concerning Quinn Emanuel's
4 unique position to know the factual predicate leading to Salesforce's decision to take action on
5 the subpoena, but in this court's experience, litigators in Nevada are in fact quite capable of
6 representing clients in enforcing subpoenas in this District, even where the factual background
7 and underlying litigation are quite complex.

8    Ultimately, the court finds that Salesforce did not meet its burden of establishing that the
9 relevant community is one other than the District of Nevada. The court will now address the
10 hourly rates.

11    **3. Appropriate Hourly Rates in the District of Nevada**

12    Orange argues that the rates requested by Salesforce greatly exceed what is reasonable in
13 the District of Nevada. In its reply, Salesforce contends that the requested rates are much closer
14 to Nevada market rates than Orange suggests, arguing there are numerous cases approving rates
15 up to $850 for partners and $525 for associates.

16    The court finds that none of the hourly rates requested by Salesforce's attorneys is
17 commensurate with those recently approved in the District of Nevada, and Salesforce has not
18 submitted evidence to justify awarding such rates in this case.

19    Hourly rates of $550 to $750 have recently been found reasonable for attorneys with 38
20 or more years of experience. *See Flynn v. Love,* No. 3:19-cv-00239-MMD-CLB, 2023 WL
21 3080494, at *3 (D. Nev. Apr. 25, 2023) ($650 rate for attorney with some 50 years of
22 experience); *Flynn v. Love,* 3:19-cv-00239-MMD-CLB, 2022 WL 2918989, at *3 (D. Nev. July
23 25, 2022) ($550 for attorney with 40 years of experience); *Boca Park Marketplace Syndications*

*Group, LLC v. Ross Dress for Less, Inc.*, No. 2:16-cv-01197-RFB-BNW, 2020 WL 2892586, at *3 (D. Nev. May 31, 2020) (approving a rate of $750 for Orange's current counsel, Daniel Polsenberg, Esq., who, according to the Nevada State Bar, had been admitted in Nevada for 38 years at that time).

Hourly rates of $500 to $641 have recently been approved for attorneys with between 17 and 38 years of experience. *See Smith & Wesson Brands, Inc. v. SW North America, Inc.*, No. 2:22-cv-01773-JCM-EJY, 2023 WL 7279950, at *3 (D. Nev. Nov. 3, 2023) ($550 for attorney with over 25 years of experience); *Kurian v. SNAPS Holding Co.*, 2023 WL 7014963, at *2 (D. Nev. Oct. 24, 2023) (approving rate of $525 for attorney with 38 years of experience and $435 for attorney with 19 years of experience); *Mayorga v. Ronaldo,* 656 F.Supp.3d 1218, 1232-1233 (D. Nev. 2023) (approving $500 rate for an attorney who at the time had been admitted to practice in Nevada for 17 years); *Leftenant v. Blackmon,* No. 2:18-cv-01948-EJY, 2022 WL 605344, at *1 (D. Nev. Feb. 28, 2022) ($500 for attorney with 30 years of experience); *Newmark Group, Inc. v. Avison Young*, No. 2:15-cv-00531-RFB-EJY, 2022 WL 990640, at *1 (D. Nev. Apr. 1, 2022) ($500 for attorneys with 18 and 13 years of experience); *Winecup Gamble, Inc. v. Gordon Ranch, LP,* No. 3:17-cv-00163-RCJ-WGC, 2021 WL 434201, at *4 (D. Nev. Feb. 8, 2021) (approving an average rate of $641 for an attorney who had over 30 years of litigation experience in Nevada); *Wunderlich v. State Farm Mut. Auto. Ins. Co.,* No. 2:21-cv-00486-JAD-EJY, 2021 WL 6138236, at *2 (D. Nev. Dec. 28, 2021) ($550 for attorney with 30 years of experience).

Rates of between $400 to $500 per hour have been approved for attorneys with 13 to 17 years of experience. *See Smith & Wesson,* 2023 WL 7279950, at *3 ($495 for attorney with 15-years of experience); *Kurian*, 2023 WL 7014963, at *2 ($400 for attorney with 15 years of

9

experience); *Fan v. Jiang,* No. 3:21-cv-00458-RCJ-CLB, 2023 WL 2189032, at *2 (D. Nev. Feb. 23, 2023) (approving rate of $475 for an attorney with 16 years of experience); *Newmark*, 2022 WL 990640, at *1 (approving rates of $500 and $450 for attorneys with 13 years of experience); *Buck v. Lakeview Mediation Solutions*, No. 2:20-cv-00189-GMN-BNW, 2021 WL 5176472, at *6 (D. Nev. Oct. 19, 2021) (approving rate of $450 for attorney with 17 years of experience).

Rates of $300 to $365 per hour have recently been awarded for attorneys with five to ten years of experience. *Kurian,* 2023 WL 7014963, at *2 ($365 for attorney with seven years of experience); *Mayorga,* 656 F.Supp.3d at 1232 (approving rate of $350 for attorneys who had been admitted for six and seven years); *Flynn*, 2023 WL 3080494, at *3 ($300 for attorney with 10 years of experience); *Baluma S.A. v. Chow*, No. 2:20-cv-1752-KJD-EJY, 2023 WL 2844215, at *2 (D. Nev. Mar. 20, 2023) (approving rate of $345 for an attorney with five years of experience); *Reno v. Western Cab Co.*, 2:18-cv-00840-APG-BNW, 2022 WL 3214695, at *2 (D. Nev. Aug. 9, 2022) ($350 for attorneys with 9 and 10 years of experience); *Flynn*, 2022 WL 2918989, at *3 ($300 for attorney with 8 years of experience).

Salesforce relies on several district court cases in Nevada to support their argument that their requested rates are not that far afield from those routinely awarded in this District. First, they point to *Mayorga v. Ronaldo*, 656 F.Supp.3d 1218 (D. Nev. 2023), where Mr. Christiansen's $850 hourly rate was approved. The court takes judicial notice of the fact that Mr. Christiansen was admitted to practice law in Nevada in 1994, so at the time of that fee request, he had been practicing law for 28 years. Judge Dorsey noted that his rate was higher than the average rates approved in the community, but she concluded it was justified in light of the circumstances presented in the case, inflation, the firm's experience and reputation in the legal community. In that case, Mr. Christiansen submitted a detailed declaration concerning his

experience and accolades, as well as a declaration from another local attorney with an opinion regarding prevailing rates in the community.

In this case, by comparison, the attorneys' declarations contain a brief statement that their rates are in line with attorneys with similar experience, but there is no detailed information about their experience nor a declaration from any other attorney regarding prevailing rates in the community.

Salesforce also points to District Judge Jones' decision in *Winecup Gamble, Inc. v. Gordon Ranch, LP*, No. 3:17-cv-00163-RCJ-WGC, 2021 WL 434201 (D. Nev. February 8, 2021). In that case, Pat Lundvall, an attorney with the law firm of McDonald Carano, was approved at an hourly average rate of $641. The court acknowledged that her rate was higher than the average in Nevada, but the court found it reasonable based on the fact that she had more than 30 years of litigation experience in Nevada. Here, the two partners are requesting rates more than double that awarded to Ms. Lundvall, and she had almost a decade more experience than they have currently.

Next, Salesforce relies on *Mayweather v. Wine Bistro*, No. 2:13-cv-00210-JAD-VCF, 2014 WL 6882300 (D. Nev. Dec. 4, 2014). Mayweather's attorneys requested rates of between $295 and $675 an hour that were approved by the court. According to the declarations submitted in support of that motion, Mark Tratos, Tyler Andrews, and Bethany Rabe, all of the law firm Greenberg Traurig LLP, in Las Vegas, worked on the case. Mr. Tratos was admitted to practice in Nevada in 1979, and so in 2014, he had 35 years of experience, which the court found justified the rate of $675 an hour. The other two attorneys had between five and nine years of experience, and they were presumably billed at the rate of $295. A rate of $675 an hour for an attorney with

35 years of experience does not justify awarding over $1300 an hour to a litigator with 23 years of experience.

Salesforce also relies on *In re USA Commercial Mortgage Co.*, 2013 WL 3944184 (D. Nev. July 30, 2013), where the court commented that prevailing market rates for commercial litigation in Nevada ranged between $350 and $775 an hour. That case involved a request for fees for work by attorneys performed by lawyers at rates between $375 to $775, which the court reduced to $350 and $600. One of the attorneys involved was Janet Chubb. The court takes judicial notice that Ms. Chubb was admitted to practice in Nevada in 1974, and in 2013, had been practicing for 39 years. Again, this decision does not justify awarding the rates sought by Salesforce.

Salesforce also relies on a district court case from Clark County, *Richman v. Haines & Krieger*, 2015 WL 10382283 (Nev. Dist. Ct. May 27, 2015). There, attorney Daniel Kennedy requested an hourly rate of $1000, which the court reduced to $750. Mr. Kennedy was admitted to practice in 1975, so at the time of that order, he had been admitted for 40 years.

Finally, Salesforce makes much of the fact that Orange's counsel, Mr. Polsenberg, requested hourly rates of $755 and $785 in 2020. *Boca Park Marketplace Syndications Group, LLC v. Ross Dress for Less, Inc.*, No. 2:16-cv-01197-RFB-BNW, 2020 WL 2892586 (D. Nev. May 31, 2020). The court reduced the hourly rate to $750. *Id.* at *3. Once again, however, the court must point out that at that time, Mr. Polsenberg had been practicing law in Nevada for 38 years.

Salesforce also points to cases where courts have found Quinn Emanuel's customary billing rates to be reasonable, but none of these cases were in the District of Nevada. (ECF No. 99 at 8:20-9:2., n. 2.)

In sum, the cases Salesforce relies on do not provide support for the requested hourly rates. When courts have approved rates that are higher than the average rates routinely approved in this District, it is commensurate with the experience of the attorney and evidence that such a rate is justified under the circumstances. Salesforce has not met its burden of demonstrating that the rates requested are reasonable.

Based on awards recently approved within this District and the court's own familiarity with prevailing rates in the community, and taking into account the limited information regarding experience levels of each of the attorneys, as well as the relative factual complexity of this matter, the court finds the following to be reasonable hourly rates:

| Name | Years Experience | Hourly Rate |
| --- | --- | --- |
| Ray Zado, Esq. | 23[3] | $600 |
| Todd Briggs, Esq. | 23[4] | $600 |
| Ian Wang, Esq. | 15 | $500 |
| Christopher Smith, Esq. | 3 | $300 |
| Christopher Sabbagh, Esq. | 3 | $300 |

**B. Hours Expended**

The party seeking an award of fees must submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id*. The court may exclude from the initial fee calculation

---

[3] The court takes judicial notice of the fact that Mr. Zado was admitted to the California State Bar in 2000.

[4] The court likewise takes judicial notice of the fact that Mr. Briggs was admitted to the California State Bar in 2000.

hours that are not reasonably expended. *Id*. at 433-34. The court may exclude hours that are not reasonable due to overstaffing, duplication of effort, excessiveness, and otherwise unnecessary to the issue. *Id*. at 434.

Salesforce spent 107.7 hours on the motion and reply brief in this matter, and it seeks a total of $98,929.66 in fees. According to the billing records, 61 hours were spent on the contempt motion and 46.7 hours on the reply brief. That is just shy of $100,000 in fees for one motion and a corresponding reply brief. That alone raises a red flag concerning the reasonableness of the fees.

In its reply brief filed in support of its fees request, Salesforce argues that the legal issues central to the motion and reply were difficult, dealing with whether a parent corporation has legal control of the documents of its subsidiary, which required Salesforce to analyze organizational documents from the related entities.

The court acknowledges the specific structural issues present here coupled with the corporate restructuring and its timing presented a level of complexity that would not ordinarily be present in this type of motion. That being said, civil litigators, especially those in commercial litigation, are no strangers to confronting issues of control in the context of corporate parent-subsidiary relationships. Moreover, Salesforce and its counsel were analyzing this exact issue in the underlying litigation and in subpoena-enforcement matters in other districts, and represent that they were intimately familiar with the factual and procedural background leading to this subpoena enforcement action. Even taking into account that this matter was more complex than the average contempt motion, the court still finds that 107.7 hours spent on a single motion and reply brief is excessive, and some of the work was redundant or unnecessary.

///

### 1. The Motion for Contempt

61 hours were spent on the motion for contempt. The first 13 pages of the contempt motion contains a recitation of background facts and procedural history. While lengthy, this section was not unduly complicated. Nor did it require any special legal research or in depth analysis. Salesforce had discussed many of these facts in prior filings not just in this court, but in the Western District of Texas and in parallel subpoena enforcement matters in other districts. The court acknowledges that there are some unique aspects to Salesforce's contempt motion, including the control analysis. Nevertheless, the court finds the overall amount of time spent researching, drafting, and reviewing this motion is excessive and, at times, redundant.

Over the course of several days in late April and early May, two partners, a 15-year associate and a third-year associate spent well over thirty hours "reviewing and revising" the motion for contempt. Salesforce explains that Mr. Zado was involved in the negotiations that preceded the underlying patent litigation, and Mr. Wang has worked on the underlying patent case for years. Salesforce does not explain why it was necessary for *both* Mr. Zado and Mr. Briggs to review and revise the reply brief, particularly when a 15-year attorney with experience on the case was also reviewing and revising the motion. Further, many of the billing entries are vague. For example, Mr. Smith's sole entry is 7.5 hours for "Review and revise motion for contempt in D. Nev.," after Mr. Wang, Mr. Briggs, and Mr. Zado collectively spent 9.2 hours working on the motion that same day.

As a result of the excessive amount of time spent on the motion, redundant nature of some of the work, and lack of sufficient explanation in some of the billing entries that would allow the court to determine whether the work billed for was reasonable, the court will reduce

the hours billed for the motion by 8 hours by subtracting 2 hours from each of the four attorneys that worked the motion.

Taking into account this reduction, the amount recoverable for the motion at this juncture is: $25,980:

| Name | Hours Billed | Reduced Hours | Adjusted Rate | Fees Allowed |
|---|---|---|---|---|
| Smith | 7.5 | 5.5 | $300 | $1,650 |
| Wang | 43.7 | 41.7 | $500 | $20,850 |
| Briggs | 5.2 | 3.2 | $600 | $1,920 |
| Zado | 4.6 | 2.6 | $600 | $1,560 |
| **TOTAL** | 61 | 53 | | **$25,980** |

### 2. The Reply

46.7 hours were spent on the reply brief. Mr. Sabbagh—a third-year associate— did the majority of the work (35.1 hours) preparing the reply brief. Salesforce explains that Mr. Sabbagh had only recently joined the case and had to familiarize himself with the record and legal issues to prepare the reply. The court appreciates that bringing other attorneys on to staff a case, including junior attorneys, is often necessary, and those attorneys are required to get up to speed; however, that time, if excessive, is frequently written off and not charged to the client. Mr. Sabbagh's billing entries are vague, consisting largely of the same phrasing: "Prepare reply in support of motion to Hold Orange in contempt." (ECF No. 99 at 7.) His billing entries with this short description are for 7.5, 8, 8.7, and 10.2 hours. While Mr. Sabbagh's declaration states that he does not engage in block billing (ECF No. 99-2 at 3 ¶ 5), this appears to be essentially what he did. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citations

omitted) (noting that block billing is disfavored because it "makes it more difficult to determine how much time was spent on particular activities."). Had additional detail been included in the description for these billing entries, the court might have concluded that the time spent was reasonable. In the absence of such description, Salesforce has not sufficiently supported its request for fees for all of the time spent by Mr. Sabbagh on the reply. For these reasons, the court will reduce the hours Mr. Sabbagh spent on the reply brief for which Salesforce can recover fees by 8 hours.

While Mr. Zado, Mr. Briggs, and Mr. Wang also reviewed and revised the reply brief on May 25 and 26, the time they spent (4.7 hours for Mr. Zado, 2.6 hours for Mr. Briggs, and 1.7 hours for Mr. Wang) is considerably less than the time that was spent reviewing and revising the motion itself. The court finds this was reasonable and will not further reduce the hours spent on the reply.

The amount recoverable for the reply brief at this juncture is $14,840.

| Name | Hours Billed | Reduced Hours | Adjusted Rate | Fees Allowed |
|---|---|---|---|---|
| Sabbagh | 35.1 | 27.1 | $300 | $8,130 |
| Wang | 2.5 | | $500 | $1,250 |
| Briggs | 4.4 | | $600 | $2,640 |
| Zado | 4.7 | | $600 | $2,820 |
| TOTAL: | | | | $ 14,840 |

**3. Block Billing**

Orange argues that Salesforce's fee award should be disallowed, or at least reduced, because certain of the attorneys engaged in block billing. Mr. Zado, Mr. Briggs, and Mr. Wang

17

all used block billing, where each billing entry consists of the total hours worked and all tasks performed in one day. To their credit, each of those lawyers helped prepare Exhibit 8, which identifies the hours that pertain directly to preparing the motion for contempt and the reply, and removes hours related to other tasks. As such, the court exercises its discretion and will not reduce the requested hours further due to the practice of block billing by Mr. Zado, Mr. Briggs, and Mr. Wang.[5]

**C. The *Kerr* Factors/LR 54-14**

Having considered the hourly rate and legal services itemized by Salesforce's counsel, the court must decide whether to increase or reduce the lodestar amount based upon the *Kerr* factors not already subsumed in the initial lodestar calculation and which are incorporated into Local Rule 54-14. The court has considered the relevant factors and finds that an additional reduction is required because Salesforce was not completely successful on the contempt motion. As such, the court will apply an additional 10 percent reduction to the total fees awarded. The total amount of fees the court has found recoverable this far on the motion and reply is $40,820 ($25,980 (for the motion) + $14,840 (for the reply)). Applying the additional 10 percent reduction, the total fees Salesforce may recover is $36,738.

///
///
///
///
///
///

---

[5] The court has already reduced the hours requested to account for block billing by Mr. Sabbagh.

### IV. CONCLUSION

Salesforce's motion for attorney's fees (ECF Nos. 97/99) is **GRANTED IN PART AND DENIED IN PART.** Salesforce is awarded the sum of **$36,738** in attorney's fees, payable by Orange within **60 days** of the date of this Order. **IT IS SO ORDERED**.

Dated: January 26, 2024

_____
Craig S. Denney
United States Magistrate Judge